IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. |
| Plaintiff, | | |
| v. | | C O M P L A I N T |
| DOLGENCORP, LLC d/b/a DOLLAR GENERAL CORP. | | JURY TRIAL DEMAND |
| Defendant. | | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Linda Atkins who was adversely affected by such practices. As alleged with greater particularity in paragraphs 11 and 14 below, the Commission alleges Defendant Employer Dolgencorp, LLC, d/b/a Dollar General Corp., failed to provide a reasonable accommodation to Ms. Atkins, a qualified individual with a disability, during her employment, and discharged her because of her disability.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This is an action authorized and instituted pursuant to § 107(a)

of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Tennessee, Knoxville Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, and is expressly authorized to bring this action by §107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference §§ 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant Dolgencorp LLC ("Defendant Employer"), a retailer of consumable goods, was doing business in the State of Tennessee and the City of Maryville, Tennessee, and has continuously had at least fifteen employees.

5. At all relevant times, Defendant Employer has continuously been and is now an employer engaged in an industry affecting commerce under § 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference §§ 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant Employer has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7. More than thirty days prior to the institution of this lawsuit, Linda Atkins filed a charge with the Commission alleging violations of Title I of the ADA by Defendant Employer.

8. The Commission found reasonable cause to believe the charge was true, and endeavored to eliminate the discriminatory practice(s) through informal methods of conference, conciliation, and persuasion, but was unable to secure a conciliation agreement acceptable to the Commission.

9. All conditions precedent to the initiation of this lawsuit have been fulfilled.

10. Since at least the Fall of 2011, Defendant Employer engaged in unlawful employment practices at its Maryville, Tennessee facility in violation of § 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b) (5)(A).

11. The unlawful employment practices include, failing to provide a reasonable accommodation to Linda Atkins during her employment because of her disability.

   a. Prior to her employment with Defendant Employer, Ms. Atkins was diagnosed with Type 2 Diabetes.

   b. As a diabetic, Ms. Atkins takes insulin injections daily and must monitor and regulate her blood glucose levels.

   c. Ms. Atkins' diabetes substantially limits endocrine function and substantially limits major life activities such as eating, sleeping, and thinking.

   d. Ms. Atkins began working as a sales associate for Defendant Employer in August 2009.

   e. Around February 2010, Ms. Atkins was promoted to the Lead Sales

Associate Position.

f.   As Lead Sales Associate, Ms. Atkins performed sales associate functions and assisted in opening and closing the store at the direction of the store manager.

g.   Ms. Atkins was qualified for the Lead Sales Associate position and she satisfactorily performed the duties of that position.

h.   On or around the Fall of 2011, Ms. Atkins was working alone in the store as the manager on duty and as relief cashier. The shift cashier had left the store for her one hour lunch break.

i.   While alone, Ms. Atkins experienced the onset of a hypoglycemic attack.

j.   To avoid leaving the cash register unattended, and for the security of the store, Ms. Atkins grabbed a bottle of orange juice from Defendant Employer's cooler and consumed it to stabilize her blood sugar.

k.   Ms. Atkins paid for the orange juice as soon as the medical episode passed.

l.   Ms. Atkins took emergency action by removing the juice from Defendant Employer's cooler to prevent a threat on her life.

m.   If Ms. Atkins had not taken action, she could have experienced serious health consequences such as a diabetic coma.

n.   Ms. Atkins told the Store Manager about the incident, her diabetes (something the Store Manager already knew about), and requested to have juice near the register to prevent a hypoglycemic attack in the future.

o.   Ms. Atkins had requested that the Store Manager allow her to have juice near the register on several occasions, including in the period October 2011 through

4

January 2012 because of her diabetes. These requests were denied.

  p. The Store Manager denied Ms. Atkins' requests for a reasonable accommodation.

  q. The Store Manager stated it was against store policy to have juice at or near the register.

  r. The Store Manager also failed to engage in the interactive process with Ms. Atkins.

  s. Defendant Employer's failure to grant Ms. Atkins' request for an accommodation caused her eventual discharge, by necessitating her consumption of juice from the store's cooler in January 2012, as alleged in paragraph 14, below.

  12. The effect of the practices complained of in paragraph 11 above, has been to deprive Ms. Atkins of equal employment opportunities and otherwise adversely affect her status as a prospective employee, because Defendant Employer failed to provide a reasonable accommodation during her employment and failed to engage in the interactive process for her disability.

  13. Since at least March 2012, Defendant Employer engaged in an unlawful employment practices at its Maryville, Tennessee facility in violation of § 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a).

  14. The unlawful employment practices include discharging Ms. Atkins because of her disability.

  a. The Commission incorporates by reference, paragraph 11 a through g.

  b. Around January 2012, Ms. Atkins was working as the manager on duty and as relief cashier while the shift cashier left the store for her one hour lunch break.

c. While alone in the store ringing up customers, Ms. Atkins experienced the onset of a hypoglycemic attack.

d. To avoid leaving the cash register unattended, and for the security of the store, Ms. Atkins grabbed a bottle of orange juice from Defendant' Employer's cooler and consumed it to stabilize her blood sugar.

e. Ms. Atkins paid for the orange juice as soon as the medical episode had passed, then she rang up the remaining customers in line.

f. Although Ms. Atkins had orange juice in her personal cooler in the rear of the store, Ms. Atkins took emergency action by removing the juice from Defendant Employer's cooler to prevent a threat on her life.

g. If Ms. Atkins had not taken action, she could have experienced a diabetic coma.

h. Ms. Atkins had experienced a similar hypoglycemic episode on or around the Fall of 2011.

i. Ms. Atkins had told the Store Manager about her diabetes, a prior hypoglycemic attack, and requested to keep juice near the register to prevent a hypoglycemic attack in the future.

j. The Store Manager denied Ms. Atkins' requests and stated it was against store policy to have juice at or near the register.

k. Around March 5, 2012, the District Manager and the Profit and Loss Regional Manager visited the Maryville Store for a yearly audit.

l. During the audit and under questioning by the District Manager and Loss Profit Regional Manager, Ms. Atkins stated she had consumed juice prior to purchase

on or around January 20, 2012, because of her diabetes.

  m. Ms. Atkins also told them she immediately paid for the juice after consuming the juice to stabilize her diabetes.

  n. Ms. Atkins told the District Manager and the Profit and Loss Regional Manager that she believed she would pass out if she did not drink the juice to stabilize her blood glucose level.

  o. The Profit and Loss Regional Manager required Ms. Atkins to write a statement documenting the occurrence.

  p. Ms. Atkins wrote the statement.

  q. Ms. Atkins stated she consumed the juice prior to payment to relieve a medical emergency, and to survive.

  r. Ms. Atkins again requested an accommodation, this time from the District Manager, Profit Loss Regional Manager, and the Dispute Resolution department because her consumption of the juice prior to payment was because of her disability.

  s. Defendant Employer again denied Ms. Atkin's request.

  t. Defendant Employer terminated Ms. Atkins' employment because of conduct inextricably linked to her disability.

  15. The effect of the practices complained of in paragraphs 11 and 14 above, has been to deprive Ms. Atkins of equal employment opportunities and otherwise adversely affect her status as an employee, because of her disability, insulin dependent diabetes.

  16. The unlawful employment practices complained of in paragraphs 11 and 14 above were intentional.

7
Case 3:14-cv-00441-TAV-HBG   Document 1   Filed 09/23/14   Page 7 of 10   PageID #: 7

17. The unlawful employment practices complained of in paragraphs 11 and 14 above were done with malice or with reckless indifference to the federally protected rights of Ms. Atkins.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from failing or refusing to provide a reasonable accommodation and discharging an employee because of a disability.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employer to make whole Ms. Atkins, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices including, but not limited to, reinstatement, or alternatively awarding her front pay and reimbursing her out of pocket medical expenses.

D. Order Defendant Employer to make whole Ms. Atkins by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 11 and 14 above, including living and travel expenses, and cost of replacement medical insurance, in amounts to be determined at trial.

E. Order Defendant Employer to make whole Ms. Atkins by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs 11 and 14 above, including emotional pain and suffering, humiliation, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial.

F. Order Defendant Employers to pay Ms. Atkins punitive damages for its malicious and reckless conduct, as described in paragraphs 11 and 14 above, in an amount to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

**P. DAVID LOPEZ**
General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel


s/ Faye A. Williams (w permission ACJ)
**FAYE A. WILLIAMS**
Regional Attorney
Tennessee Bar No. 011730

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Memphis District Office
1407 Union Avenue, Suite 901
Memphis, TN  38104
(901) 544-0088


s/ Anica C. Jones
**ANICA C. JONES**
Trial Attorney
Tennessee Bar No. 025325

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Nashville Area Office
220 Athens Way, Suite 350
Nashville, TN  37228
(615) 736-2105