UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

EQUAL EMPLOYMENT          )
OPPORTUNITY COMMISSION,   )
                         )
          Plaintiff,     )
                         )
and                      )
                         )
LINDA K. ATKINS,         )
                         )
          Intervening Plaintiff,  )
                         )
v.                       )          No.:   3:14-CV-441-TAV-HBG
                         )
DOLGENCORP, LLC,         )
                         )
          Defendant.     )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on the following motions: (1) plaintiff's

Motion for Partial Summary Judgment Regarding Defendant's Affirmative Defense

Alleging the EEOC Failed to Conciliate in Good Faith [Doc. 24]; (2) defendant's Motion

for Summary Judgment [Doc. 28]; (3) plaintiff and intervening plaintiff's (hereinafter

"plaintiffs") Motion for Partial Summary Judgment [Doc. 31]; (4) defendant's Motion to

Strike Declaration of Wanda Shown [Doc. 40]; (5) defendant's Motion to Strike

Declaration of Katharine K. Kores [Doc. 47]; and (6) defendant's Motion to Permit the

Deposition of Katharine Kores Out of Time [Doc. 57].  The parties filed responses and

replies to the pending motions [Docs. 37–39, 49–55, 61, 63].

Having reviewed the parties' arguments, the record in this case, and relevant law, the Court will: (1) deny as moot plaintiff's Motion for Partial Summary Judgment Regarding Defendant's Affirmative Defense Alleging the EEOC Failed to Conciliate in Good Faith [Doc. 24]; (2) grant in part and deny in part defendant's Motion for Summary Judgment [Doc. 28]; (3) deny plaintiffs' Motion for Partial Summary Judgment [Doc. 31]; (4) deny defendant's Motion to Strike Declaration of Wanda Shown [Doc. 40]; (5) deny defendant's Motion to Strike Declaration of Katharine K. Kores [Doc. 47]; and (6) grant defendant's Motion to Permit the Deposition of Katharine Kores Out of Time [Doc. 57].

## I.    Background[1]

In March 2009, intervening plaintiff, Atkins, was diagnosed with Type 2 diabetes [Doc. 31-4 p. 2; Doc. 31-13 p. 2]. In order to treat her diabetes, Atkins takes two types of insulin a total of four times per day [Doc. 31-4 p. 5; Doc. 31-13 p. 2]. Atkins's diabetes requires her to monitor what and when she eats [Doc. 31-4 pp. 42–43]. She is limited in her daily life activities because she must ensure she has access to insulin everywhere she goes [*Id.*]. Atkins monitors her blood sugar level daily to ensure that it is neither two high nor too low, as either situation can have negative effects on her health [*Id.* at 5–7, 11, 17]. She commonly uses orange juice or candy bars to raise her blood sugar [*Id.* at 7–8].

---

[1] These facts include information from the declarations of Wanda Shown and Katharine Kores, as the Court will deny the defendant's motions to strike those documents.

2

Defendant, Dollar General, hired Atkins as a Sales Associate in August 2009 [Doc. 28-1 pp. 4, 6, 69]. The day Atkins completed her initial employment paperwork, she certified that she had reviewed a document outlining the physical requirements for working in defendant's store [Doc. 28-2 p. 51]. Immediately above her initials, Atkins certified that she reviewed the following policy statement:

> If you are a person with a disability, as that term is defined by the Americans with Disabilities Act ("ADA") or other law, and you believe that you require an accommodation to perform the essential job functions outlined above, please contact the ERC at 1-888-237-4114 immediately.

[*Id.*]. Atkins also received a copy of Dollar General's Employee Handbook, which includes defendant's policy on requests for accommodation [Doc. 28-1 pp. 5–11, 69–91]. The handbook states: "If you believe you require an accommodation in order perform your job, please speak with your manager, Human Resources, or contact the Employee Response Center" [Doc. 31-15 p. 4]. Another version of this policy states that an employee should "speak with your supervisor, Human Resources, or contact the Employee Response Center" [Doc. 31-9 p. 1]. Atkins knew she was diabetic a few months prior to completing her employment paperwork [Doc. 28-1 pp. 4, 6, 69; Doc. 31-4 p. 2].

During her employment with defendant from August 2009 to March 2012, Atkins received annual raises and was promoted to Lead Sales Associate, also known as "third key" [Doc. 31-3 ¶¶ 2–3; Doc. 31-6 p. 6; Doc. 31-13 p. 2]. The functions of this position include the regular duties of a sales associate plus many of the responsibilities of a manager, such as opening and closing the store, handling money, and having access to

3

the store safe [Doc. 31-3 ¶ 2; Doc. 31-6 p. 7; Doc. 31-11]. Atkins's supervisor, Wanda Shown, found Atkins to be a good worker and to be very trustworthy [Doc. 31-3 ¶ 2].

While employed with defendant, Atkins regularly brought and stored insulin and orange juice in the employee break room [Doc. 28-1 p. 109; Doc. 31-4 p. 9]. The break room was about thirty yards from the front of the store and the cash registers [Doc. 28-1 pp. 11–12]. Atkins gave herself insulin injections several times a day while on break during working hours [Doc. 31-3 ¶ 5].

Atkins commonly spoke with Shown about her diabetes and Shown was aware that Atkins would take insulin and test her blood sugar throughout the day [Doc. 21-8 pp. 48–49; Doc. 31-3 ¶¶ 4–6]. Shown's mother is also diabetic, and for this reason, Shown was aware of the possible life-threatening consequences of a hypoglycemic episode from failing to properly control blood sugar levels [Doc. 31-3 ¶ 6].

Atkins spoke to Shown on several occasions about her need to keep a snack or beverage at the register while she worked to prevent a possible hypoglycemic episode [*Id.* ¶ 7]. Atkins emphasized the need for this particularly while working alone in the store [*Id.*]. Mary Jane Ray, Atkins's former co-worker, also confirms that these conversations took place [Doc. 31-2 ¶ 4]. In response to this request, Shown told Atkins that it was against store policy to keep food or drink at the register and that if she was going to keep such items at the register, she should be careful to avoid being seen violating policy on the cameras [Doc. 31-3 ¶ 8].

4

Scott Strange, District Manager for defendant, acknowledges that is would be appropriate for an employee to make a verbal accommodation request from a supervisor [Doc. 31-6 pp. 2–3]. Strange, however, is not aware of any particular training or policy regarding a store manager's role in documenting a request for accommodation [*Id.* at 19]. Shown did not know that she could excuse Atkins from the policy prohibiting food or drink at the register and does not recall receiving training or instruction about defendant's obligation to provide employees with reasonable accommodations for health conditions [Doc. 31-3 ¶¶ 15–16]. For that reason, she did not tell Atkins to contact anyone else to discuss the accommodation request [*Id.* ¶ 15].

While working for defendant, Atkins would occasionally experience low-blood sugar episodes [*Id.* at 11]. These episodes occur suddenly and Atkins would experience symptoms such as difficulty seeing and shakiness [*Id.*]. Typically when these episodes would occur, Atkins was not alone in the store at the cash register [*Id.* at 20, 38]. When other employees were in the store with her, she would counter the episodes by getting orange juice from her cooler in the break room at the back of the store [*Id.*]. Approximately every two or three months, Atkins would need to go to the break room and drink her juice to prevent such an episode [*Id.* at 17]. She did this without issue and was never disciplined for retrieving her own juice while she worked [Doc. 28-1 p. 40].

On two occasions, Atkins experienced hypoglycemic episodes while working alone in the store [Doc. 31-13 p. 2]. One occasion occurred in late 2011 and the other occurred in early 2012 [*Id.* at 2–3; Doc. 31-4 p. 16]. During both episodes, Atkins was

the only employee in the store, was working at the register, and had customers in line [Doc. 31-4 pp. 12–14]. Both times, she took a bottle of orange juice from the store cooler and drank from it [*Id.*]. As soon as she was able, she rang up the juice at the register and paid with cash [*Id.*]. She did not keep a receipt for the juice on either occasion [*Id.* at 14].

Even though it was against company policy, Atkins would occasionally store groceries she purchased in defendant's display cooler near the front of the store [*Id.* at 18–23]. She did not, however, store juice in this cooler [*Id.* at 23]. Atkins also wore an apron with pockets as part of her uniform while she worked, but did not attempt to keep juice in it [Doc. 28-1 pp. 15–17]. She asserts it would not be conducive to do so because she was constantly moving around at work and she always had juice in the break room [*Id.*].

Defendant has policies in place to deter "shrink," the retail term for store inventory that is lost or stolen [Doc. 28-1 pp. 50–51; Doc 28-3 p. 4]. One source of shrink is "grazing," which is when employees consume merchandise in the store without paying for it first [Doc. 28-1 p. 93]. Defendant's Employee Purchase Policy includes the following provisions, among others: (1) that a member of management must ring up employee purchases; (2) employees—including lead sales associates—are not allowed to ring up their own purchases; (3) employees are not allowed to hold merchandise for purchase at a later time; (4) merchandise must be paid for before it is used or consumed; (5) the receipt for purchase must be given to the employee and the employee must tape the receipt to the item [*Id.* at 98]. Atkins received a memorandum on grazing and she

acknowledges that she was aware that defendant had a policy prohibiting it [*Id.* at 41–42, 94].

Atkins contends that she decided to commit a grazing violation instead of going to the break room to get her own orange juice on the two circumstances previously described because she knew she needed to act quickly to protect her health and she was trained that it was against store policy to keep the front of the store unsecured [Doc. 31-4 pp. 12–14, 28–29, 38]. On both occasions, Atkins reported the incidents to Shown as soon as she saw Shown, which was within a day or two [*Id.* at 21–22; Doc. 31-3 ¶ 9]. Even though Shown understood that Atkins committed a grazing violation, she did not discipline or report Atkins because she understood that it occurred because of Atkins's health condition [Doc. 31-3 ¶ 14].

On March 15, 2012, District Manager Scott Strange and Regional Loss Prevention Manager Matt Irwin conducted a shrinkage audit of the store [Doc. 28-2 p. 9; Doc. 28-3 pp. 14–18]. During this audit, Strange and Irwin met with every employee working that day to discuss possible employee theft issues [Doc. 28-2 p. 9; Doc. 28-3 pp. 14–18].

Among the employees to whom Strange and Irwin spoke were Atkins's co-workers Mark Beaver and Sandra Viefield [Doc. 28-4 p. 7]. Both Beaver and Viefield admitted to grazing and were terminated that day [*Id.*; Doc. 31-6 p. 15]. Neither Beaver nor Viefield had diabetes or any other disability related to their grazing violations [Doc. 31-6 p. 15]. During their interviews, they reported that Atkins had also committed grazing violations [*Id.* at 32].

7

Strange and Irwin also interviewed Atkins [Doc. 28-3 p. 19]. In that interview, Atkins admitted to violating the grazing policy, but explained that she only did so because of a medical emergency [Doc. 31-13 p. 3]. Strange described Atkins as being "very up front about it," and said that she went into detail about how she consumed the product because she was experiencing a "diabetic shock" [Doc. 31-6 pp. 34–35].

During the interview, Irwin asked Atkins to write a statement describing her conduct and Atkins complied [Doc. 28-1 pp. 105–06]. In the statement, Atkins admitted that her conduct was wrong, but attributed her grazing to her medical condition [*Id.*]. She explained that she needed to consume something with sugar or else she may "pass out" [*Id.*]. She also mentioned that the store policy forbids her from keeping juice up front and that she is not allowed to leave the line of customers [*Id.*].

Irwin explained to Atkins that she needed to speak with Human Resources ("HR") in order to keep a drink with her at the register [Doc. 31-7 pp. 17–21]. In Irwin's opinion, the process of applying for a reasonable accommodation was not clear to Atkins [*Id.* at 20]. After having this discussion with Irwin, Atkins mentioned in her statement that she would like to contact HR to make a reasonable accommodation request [Doc. 28-1 pp. 105–06].

Strange and Irwin understood that the reason Atkins violated the policy was because of a medical emergency [Doc. 31-6 p. 15; Doc. 31-7 p. 12]. They decided to terminate Atkins that day for violating the anti-grazing policy—before Atkins had the

8

opportunity to discuss the possibility of a reasonable accommodation with HR [Doc. 31-7 p. 17, 21].

Defendant's Employee Handbook identifies that a violation of the Employee Purchase Policy is a first offense that may lead to immediate termination [Doc. 28-1 pp. 75–76]. Irwin and Strange both recommend immediate termination upon learning that employees have engaged in grazing [Doc. 28-2 pp. 3–4; Doc. 28-3 pp. 7–8]. According to Shown, however, it was not unusual for employees to commit grazing violations [Doc. 31-3 ¶¶ 11–12]. She also notes that defendant did not always strictly enforce the grazing policy [*Id.*]. Viefield and Beaver, who were interviewed and terminated on March 15, 2012, informed Irwin and Strange that they had seen individuals other than Atkins violating the grazing policy [Doc. 31-8 p. 2]. But, only Viefield, Beaver, and Atkins were terminated that day [*Id.*].

Atkins filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 17, 2012, 187 days after Atkins's discharge [Doc. 28-6 p. 2]. The EEOC and the Tennessee Human Rights Commission ("THRC") had a Worksharing Agreement for fiscal year 2012, that was in effect when Atkins filed her charge [Doc. 38-1 pp. 10–16]. The agreement provides that charges may be dual-filed with the EEOC and the THRC [*Id.*].

In Atkins's charge, she marked "disability," but did not mark "retaliation," in the "cause of discrimination based on" box on the form [Doc. 28-1 p. 108]. The "Statement of Discrimination" attached to the charge also does not mention retaliation [*Id.* at 109–12].

Following its investigation of the charge, the EEOC filed its complaint against defendant on September 23, 2014, asserting claims under the Americans with Disabilities Act ("ADA") for: (1) failure to provide a reasonable accommodation; and (2) discriminatory discharge [Doc. 1]. Atkins filed her intervenor complaint on December 18, 2014, asserting claims under the ADA for: (1) failure to provide a reasonable accommodation; (2) discriminatory discharge; and (3) retaliation for activity protected by the ADA [Doc. 12].

## II.     Discovery Motions

Defendant moves the Court to strike the declarations of Wanda Shown [Doc. 31-3] and Katharine W. Kores [Doc. 38-1], which plaintiffs attached in support of their motion for partial summary judgment [Doc. 31] and the EEOC attached in support of its response to defendant's motion for summary judgment [Doc. 38]. Should the Court deny defendant's motion to strike the Kores's declaration, defendant also moves the Court to grant it leave to depose Kores after the discovery deadline.

Defendant argues that the Court should strike the declarations pursuant to Federal Rule of Civil Procedure 37(c). Rule 37(c) provides that:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use the information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

10

Fed. R. Civ. P. 37(c)(1).  The rule also states that "[i]n addition to or instead of this sanction, . . . on motion and after giving an opportunity to be heard," a court "may impose other appropriate sanctions."  Fed. R. Civ. P. 37(c)(1).

Rule 26(a) of the Federal Rules of Civil Procedure details the required disclosures a party must provide in discovery.  Fed. R. Civ. P. 26(a).  These disclosures include: (1) the names and contact information of "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses;" and (2) a copy of all documents that the disclosing party has in its possession that it may use to support its claims or defenses.  Fed. R. Civ. P. 26(a)(1)(i)–(ii).  Rule 26(e) states as follows:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A)    in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e)(1).

Should a party violate Rule 26(a) or Rule 26(e), Rule 37(c)(1) mandates that the Court sanction the party unless the Court finds that the failure to disclose was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1); *see also R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271–72 (6th Cir. 2010) ("The burden is on the potentially sanctioned party to prove harmlessness.").

11

### A.      Compliance with the Scheduling Order

As an initial matter, the Court notes that its preferred method of handling discovery disputes is laid out in the Scheduling Order [Doc. 16 ¶ 3(j)]. This method consists of a three-step process. First, the parties are to meet and confer among themselves in an effort to resolve the dispute. Second, if the parties are unable to resolve the dispute themselves, the parties are to arrange a conference with the magistrate judge assigned to the case. Finally, the filing of written motions, if necessary, follows the conference.

Defendant contends that its motions to strike are not discovery motions requiring a meet and confer [Doc. 54 pp. 2–3]. Defendant, however, is asking the Court to sanction the plaintiffs for failing to provide discovery at an earlier time. This request certainly constitutes a discovery dispute and it falls within the confines of Paragraph 3(j) of the Scheduling Order [Doc. 16 ¶ 3(j)]. In the interests of judicial economy, however, the Court waives the meet and confer requirement in this instance.[2] All further discovery disputes will be resolved in compliance with the procedures set forth in the Scheduling Order.

---

[2]      Additionally, defense counsel submits that he attempted to confer with Atkins's counsel regarding the withdrawal of Shown's declaration after filing the instant motion to strike [Doc. 41] and Atkins's counsel confirmed that Atkins would not withdraw the declaration [Doc. 54]. In light of this information, the Court finds that a meet and confer at this stage in the dispute would be futile.

### B. Motion to Strike the Declaration of Wanda Shown

Defendant moves to strike the Declaration of Wanda Shown [Doc. 31-3] filed in support of plaintiffs' motion for partial summary judgment [Doc. 31]. Defendant contends that neither plaintiff produced the declaration to defendant in a timely manner, despite being required to do so under Rule 26. Consequently, defendant argues that the declaration must be stricken from the record pursuant to Rule 37(c)(1). In response, plaintiffs assert that they are in full compliance with Rule 26, and even if they acted in violation of Rule 26, sanctions under Rule 37 are inappropriate because any failure to provide information was harmless.

From early on in the litigation, plaintiffs disclosed the identity of Shown and detailed the substance of her likely testimony [Doc. 52-2 p. 2; Doc 52-3 pp. 3–4]. It was not until February 12, 2016, however, that Shown issued a sworn statement detailing her knowledge of the case [Doc. 31-3; Doc. 52-1 ¶ 6].[3] Upon review of Rule 26(a), the Court finds that because plaintiffs disclosed Shown's identity in their initial disclosures, they did not act in violation of the rule.

The Court now turns to whether plaintiffs are subject to sanctions because of a violation of Rule 26(e), that is, a failure to supplement disclosures and responses in a timely manner. Plaintiffs argue that they did not have a duty to supplement, and if they did, that their disclosure on March 11, 2016, was timely.

---

[3] The Court notes that counsel for Atkins, who eventually obtained the statement, had a very difficult time locating Shown [Doc. 52-1].

Atkins contends that all of the information contained in Shown's declaration was previously disclosed to defendant on several occasions [Doc. 52 p. 7]. Consequently, she asserts, there was no reason for her to supplement her disclosures or responses pursuant to Rule 26(e) because none of them were incomplete or incorrect.

Atkins's argument fails for several reasons. Even if the Court finds that plaintiffs previously disclosed to defendant all the substance of the declaration, that is, all the information that Shown knew in relation to this case, plaintiffs did not disclose that Shown executed a sworn declaration to confirming her knowledge. Anticipated testimony is not the same as substantive evidence in the form of a sworn declaration. A sworn declaration has independent significance. Furthermore, defendant served written discovery requests on August 20, 2015, that included requests for production of documents asking specifically for declarations and witness statements that support their position [Doc. 40-2]. Upon obtaining the declaration, therefore, plaintiffs had an obligation to supplement their disclosures and responses by providing defendant with the declaration in a timely manner.

The question that remains is whether plaintiffs' disclosure of the declaration on March 11, 2016, constitutes disclosure "in a timely manner." Fed. R. Civ. P. 26(e)(1). "In a timely manner is not defined in the rule and must necessarily depend on the facts and circumstances of each case." *U.S. ex rel. Fry v. Guidant Corp.*, No. 3:03-0842, 2009 WL 3103836, at *4 (M.D. Tenn. Sept. 24, 2009). Parties should supplement disclosures

14

and responses "periodically in a fashion that will allow [the opposing party] to conduct meaningful discovery and avoid undue delay in the progress of [the] case." *Id.*

In determining whether a supplement is timely, courts have considered that parties generally have a thirty-day window to respond to discovery requests. *Trust v. Durst*, No. 12-5255, 2015 WL 7720481, at *6 (D.N.J. Nov. 30, 2015); *see also* Fed. R. Civ. P. 33(b)(2) (interrogatories); Fed. R. Civ. P. 34(b)(2) (production of documents); Fed. R. Civ. P. 36(a)(3) (requests for admission). Courts are likely to determine that a party violated Rule 26(e) when the party supplemented disclosures or responses after the discovery deadline in the case. *See Gipson v. Vought Aircraft Indus., Inc.*, 387 F. App'x 548, 551–52 (6th Cir. 2010) (upholding the district court's strike of an affidavit that was not produced until after the close of discovery); *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (upholding the exclusion of expert testimony where the plaintiff disclosed expert witness more than seven months after the close of discovery); *Jones v. McGrath*, No. 1:12-cv-B946-HJW, 2014 WL 4388262, at *7 (S.D. Ohio Sept. 5, 2014) (declining to consider evidence where the plaintiffs failed to supplement the Rule 26 disclosures before the discovery deadline).

Counsel for Atkins obtained the declaration from Shown on February 12, 2016, and plaintiffs disclosed the declaration on March 11, 2016—twenty-eight days later. The parties, therefore, supplemented their disclosures and responses within the typical thirty-day window to respond to discovery requests. The Court also notes that the disclosure occurred well before the close of discovery.

15

In support of its motion, defendant does not cite to any cases where a court has excluded a document pursuant to Rule 37(c) for an underlying violation of Rule 26(e), where the party supplemented a disclosure or response within thirty-days of receiving the new information, and did so before the close of discovery. The Court finds, based on these facts and the underlying law, that the disclosure of the declaration was timely. Consequently, plaintiffs did not violate Rule 26(e) and sanctions pursuant to Rule 37(c) are not warranted. The Court will, therefore, deny defendant's motion to strike the declaration of Wanda Shown.

### C.    Motion to Strike the Declaration of Katharine Kores

Defendant also moves to strike the declaration of Katharine Kores and the worksharing agreement [Doc. 38-1] filed in support of the EEOC's response in opposition to defendant's summary judgment motion [Doc. 38]. Defendant argues that exclusion pursuant to Rule 37(c) is appropriate because the EEOC and Atkins violated their discovery obligations under Rules 26(a) and (e) by not previously identifying Kores, the worksharing agreement, or Kores's declaration. The EEOC responded in opposition to this request.

Assuming that plaintiffs did violate their discovery obligations under Rules 26(a) or (e)—a point the EEOC contests—the exclusion of the worksharing agreement would effectively result in dismissal of certain claims. As discussed herein, if the Court strikes the worksharing agreement from the record, the ADA claims would be timebarred. As such, the Court does not view this motion as a request for preclusion, but "as a backdoor

16

route to judgment." *Signature Combs, Inc. v. United States*, 222 F.R.D. 343, 345 (W.D. Tenn. 2004) (construing a motion to preclude evidence pursuant to Rule 37(c) as a request for dismissal under Rule 37(c)).

Rule 37(c), by reference to Rule 37(b)(2)(A)(v), allows for the dismissal of an action in whole or in part as a sanction for violating Rules 26(a) or (e). Dismissal is a sanction of "last resort that may be imposed only if [a] court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." *Patton v. Aerojet Ordnance Co.*, 765 F.2d 604, 607 (6th Cir. 1985); *see also Signature Combs*, 222 F.R.D. at 345 (applying this standard for dismissal when construing a motion to preclude as a request for dismissal). When contemplating dismissal, a court should also assess: (1) whether the opposing party was prejudiced by the discovery violation; (2) whether the potentially dismissed party was warned that a discovery violation could lead to dismissal; and (3) whether less drastic sanctions were imposed or considered before dismissal. *Fharmacy Records v. Nassar*, 379 F. App'x 522, 523–24 (6th Cir. 2010).

There is no evidence before the Court that Atkins or the EEOC acted with willfulness, bad faith, or fault. The Court was not previously presented with any pleadings that led the Court warning the parties that a failure to disclose these documents could lead to dismissal. And given that the Court has not entered any prior discovery orders on this issue, no lesser sanctions have been imposed.

17

In considering the prejudice to defendant, the EEOC argues that even if there was an obligation to identify Kores and to produce the worksharing agreement, any failure to do so is harmless. It asserts that the information in Kores's declaration is simply within her capacity as a custodian of record and that any other information is a mere restatement of law. The EEOC also argues that the worksharing agreement is a matter of public record and is available on the internet.

The Sixth Circuit has held that "[t]he rules of discovery . . . do not permit parties to withhold material simply because the opponent could discover it on his or her own." *Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428 (6th Cir. 1996). The Court notes, however, that a number of courts have recognized that there is no discovery obligation to produce documents in the public record that are equally available to both parties. *See, e.g.*, *Tdata Inc. v. Aircraft Tech. Publishers*, No. 2:03-CV-264, 2007 WL 433295, at *2 (S.D. Ohio Feb. 5, 2007); *Raytheon Aircraft Corp. v. United States*, No. 05-2328-JWL-DJW, 2006 WL 2570545, at *7 (D. Kan. Sept. 5, 2006); *Krause v. Buffalo & Erie Cty. Workforce Dev. Consortium, Inc.*, 425 F. Supp. 2d 352, 374–75 (W.D.N.Y. 2006); *Dushkin Pub. Group, Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C.1991). In addition, to the extent that parties are required to disclose public records in discovery, courts have found that the failure to do so has a minimal impact on the opposing party. *See Ford v. Hamilton Cty. Juvenile Court*, No. 1:05-CV-557, 2007 WL 2302816, at *8 n.6 (S.D. Ohio Aug. 8, 2007) (finding that a failure to disclose was

18

harmless when the party did nothing more than rely on public records that were available on the internet).

In considering whether defendant was prejudiced by the late disclosure of Kores's declaration, the Court finds that the information in Kores's declaration is analogous to a public record. The Kores's declaration does little more than establish her position as a custodian of the agreement and restate controlling law. Therefore, upon review of the record and the underlying law, the Court does not find that the relevant factors weigh in favor of the sanction of dismissal. Even if the Court were to find a Rule 26(a) or (e) violation—a finding the Court does not make—dismissing the ADA claims is not an appropriate sanction. As the preclusion that defendant requests effectively asks for dismissal as a discovery sanction, the Court finds that it is not warranted. Consequently, the Court will deny defendant's motion to strike the declaration of Katharine Kores.

In light of the Court's decision to deny defendant's motion to strike the Kores's declaration, the Court considers defendant's Motion to Permit the Deposition of Katharine Kores Out of Time [Doc. 57]. Because the disclosure of the declaration was close to the end of the discovery period, the Court finds good cause to allow defendant the ability to depose Kores. For good cause shown, the Court will grant this motion.

## III. Motions for Summary Judgment

There are three motions for summary judgment before the Court: (1) plaintiff's Motion for Partial Summary Judgment Regarding Defendant's Affirmative Defense Alleging the EEOC Failed to Conciliate in Good Faith [Doc. 24]; (2) defendant's Motion

19

for Summary Judgment [Doc. 28]; and (3) plaintiffs' Motion for Partial Summary Judgment [Doc. 31].

On March 17, 2016, defendant and the EEOC filed an agreed stipulation which states as follows: "The parties agree that, when [the] Amended Answer is filed, Plaintiff EEOC's Motion for Partial Summary Judgment filed on February 29, 2016 (Docket No. 24), will be rendered moot" [Doc. 35 ¶ 3]. Defendant filed the referenced amended answer on March 18, 2016 [Doc. 36]. In light of the parties' agreement, the Court will deny as moot the EEOC's motion [Doc. 24]. The Court will, therefore, address the two remaining motions for summary judgment.

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn.

20

1991) (citing *Celotex*, 477 U.S. at 317). The plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[M]ere conclusory and unsupported allegations, rooted in speculation, do not meet that burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (quotations and citation omitted). Summary judgment may not be defeated "based on rumors, conclusory allegations, or subjective beliefs." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson*, 477 U.S. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Hein*, 232 F.3d at 488.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

21

The EEOC and Atkins are pursuing ADA claims under two theories: (1) failure to provide reasonable accommodation; and (2) discriminatory discharge. Atkins is also asserting a claim for retaliation. Defendant moves the Court to grant summary judgment in its favor on all claims asserted by plaintiffs. Plaintiffs move the Court to grant summary judgment in their favor on their claims for failure to provide reasonable accommodation and discriminatory discharge.

Defendant puts forth the following three arguments in support of its motion for summary judgment: (1) all claims are untimely; (2) Atkins failed to administratively exhaust her remedies in regard to her retaliation claim; and (3) there is no dispute of material fact that defendant did not violate the ADA under any theory presented. In response, the EEOC and Atkins dispute all three arguments and further argue that they are entitled to judgment as a matter of law on their failure to accommodate and discriminatory discharge claims because there is no dispute of material fact as to the following: (1) that defendant failed to reasonably accommodate Atkins; and (2) that defendant engaged in a discriminatory discharge. The Court will address each of these arguments in turn.

## A. Timeliness

A plaintiff asserting an ADA claim must comply with the administrative exhaustion procedures set forth in 42 U.S.C. § 2000e-5. 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5). Section 2000e-5 provides in relevant part:

> A charge under this section shall be filed within [180] days after the alleged unlawful employment practice occurred . . . except that in a case of an

22

unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed by or on behalf of the person aggrieved within [300] days after the alleged unlawful employment practice occurred.

42 U.S.C. § 2000e-5(e)(1). The Sixth Circuit has labeled this provision as containing "a dual statute of limitations," with a 300-day limit for "deferral state[s]" and a 180-day limit for all other states. *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001).

It is undisputed that Atkins filed her disability discrimination claims with the EEOC more than 180 days but less than 300 days after defendant allegedly discriminated against her. The parties are in dispute as to whether the 180-day or 300-day limit applies.

"Tennessee is a deferral state, which means the statute of limitations for filing an employment discrimination charge with the EEOC or the THRC is 300 days after the alleged unlawful employment action occurred." *Holleman v. BellSouth Telecomms., Inc.*, No. 3:09-CV-311, 2011 WL 3876590, at *7 (E.D. Tenn. Sept. 1, 2011). If a charge is not first filed with the THRC, or dual-filed with the EEOC and the THRC contemporaneously, however, then the 180-day limit applies. *See El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 463 (6th Cir. 2006) (applying the 180-day time limit in Tennessee where the plaintiff filed an EEOC charge but "nothing in the record indicat[ed] that [the plaintiff] instituted proceedings with a state or local agency").

Furthermore, in order for the 300-day limit to apply, a state or local agency must have the "authority to grant or seek relief" from the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). The EEOC's regulations provide that an "agency

without subject matter jurisdiction over a charge . . . is equivalent to a jurisdiction having no [] agency." 29 C.F.R. § 1601.13(a)(2). If an agency has no subject matter jurisdiction, then the charge must be properly filed "within 180 days from the date of the alleged violation." *Id.*

Defendant argues that the 180-day limit applies for two reasons. First, it asserts that Atkins never instituted proceedings with a state or local agency. Second, defendant contends that all of plaintiffs' legal theories for relief are premised on defendant's alleged failure to accommodate—a theory of relief that is not provided for in the Tennessee Disability Act ("TDA"). For this reason, defendant argues that the THRC does not have subject matter jurisdiction over the charge and, therefore, the 180-day limit applies. The Court will address each of these arguments in turn.

Defendant contends that the 180-day limitation applies to Atkins because there is no evidence that Atkins instituted proceedings with a state or local agency. In response, the EEOC provided the worksharing agreement between the EEOC and THRC which allows for an individual to dual-file a charge in both the EEOC and the THRC [Doc. 38-1 p. 11]. When Atkins filed her charge with the EEOC, she listed the THRC on the appropriate form to allow dual-filing between the agencies and also declared under penalty of perjury that: "I want this charge filed with both EEOC and the State or local Agency" [*Id.* at 5]. Because there is evidence in the record that plaintiff filed her charge contemporaneously with the EEOC and THRC, defendant's argument fails on this basis.

24

Defendant also argues that Atkins's charge stems from a failure to accommodate claim, and therefore, the THRC lacks subject matter jurisdiction over the charge and the 180-day limit applies. Should the Court find that the THRC lacks subject matter jurisdiction, then the charge must have been properly filed with the EEOC "within 180 days from the date of the alleged violation." 29 C.F.R. § 1601.13(a)(2).

The Court notes that to succeed on a discrimination claim under the TDA, a plaintiff must show that (1) she was qualified for the position; (2) she was disabled; and (3) she suffered an adverse employment action because of that disability. *Bennett v. Nissan N. Am., Inc.*, 315 S.W.3d 832, 841 (Tenn. Ct. App. 2009) (citing *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000), *abrogated on other grounds by Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010)).

The elements of a TDA discrimination claim "are very similar to those of the ADA, but do not include a 'reasonable accommodation' component." *Bennett*, 315 S.W.3d at 841–42 (citation omitted); *see also Jones v. Sharp Elecs. Corp.*, No. W2013-01817-COA-R3CV, 2014 WL 806131, at *3 (Tenn. Ct. App. Feb. 28, 2014) ("Unlike its federal counterpart, the Americans with Disabilities Act . . . , the TDA does not impose a duty on employers to make reasonable accommodations to accommodate a disabled employee."). Thus, for claims under the TDA, courts will not find that an employer discriminated against its employee if the employee's disability prevented or impaired him or her from performing the job's duties. *Jones*, No. W2013-01817-COA-R3CV, 2014 WL 806131, at *3 (citing *Bennett*, 315 S.W.3d at 841).

Furthermore, courts have declined to find that a retaliation claim under the TDA has merit if the alleged reason for retaliation is that the plaintiff requested an accommodation. *See, e.g.*, *Lovell v. Champion Car Wash, LLC*, 969 F. Supp. 2d 945, 954 n.8 (M.D. Tenn. 2013) (citation omitted) ("Requesting a reasonable accommodation under the TDA is not a protected activity, and does not support a retaliation claim."); *Burress v. City of Franklin*, 809 F. Supp. 2d 795, 818 (M.D. Tenn. 2011) (finding that "because the plaintiff's TDA retaliation claim is premised entirely upon his having requested a reasonable accommodation, it appears the claim must fail").

Defendant asserts that all the theories underlying Atkins's charge rest on the accusation that defendant failed to accommodate Atkins. Because the TDA does not require reasonable accommodation, defendant argues that THRC does not have the authority to grant or seek relief from the alleged unlawful employment practice, and consequently, the THRC lacks subject matter jurisdiction over the charge and the 180-day limit applies.

The Court notes, however, that its inquiry here is not whether Atkins could succeed on the merits of a claim brought under the TDA. Rather, the Court must determine whether the THRC would properly have subject matter jurisdiction, that is, whether it has the "authority to grant or seek relief" from the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13(a)(2).

26

All the cases defendant cites in support of its contention that the THRC lacks jurisdiction over this matter involve situations where the applicable state's anti-discrimination laws did not even apply to the defendant. *Dezaio v. Port Auth. of N.Y. & N.J.*, 205 F.3d 62, 67 (2d Cir. 2000) (applying the 180-day limit because New York's anti-discrimination laws did not apply to the defendant); *Vernon v. Port Auth. of N.Y. & N.J.*, 154 F. Supp. 2d 844, 850 (S.D.N.Y. 2001) (same); *Vitug v. Multistate Tax Comm'n*, 860 F. Supp. 556, 551 (N.D. Ill. 1994) (applying the 180-day limit because the Illinois Human Rights Act did not apply to the defendant). In those cases, the relevant agency had no authority over the defendants and was unable to grant or seek relief.

In contrast, here, the THRC has the ability to grant or seek relief because the TDA applies to defendant and the THRC retains subject matter jurisdiction over discrimination charges filed against defendant. Consequently, the Court finds that defendant's second argument also fails, and the Court applies the 300-day limit. Because Atkins dual-filed her charge with the EEOC and the THRC within 300 days of the alleged discriminatory act, the claims asserted are timely.

## B. Failure to Administratively Exhaust

Defendant contends that Atkins failed to administratively exhaust her remedies in regard to her retaliation claim because she did not allege retaliation in her EEOC charge.

"Under the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (citations omitted). EEOC charges are

"construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations of the EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) (citation omitted); *see also Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010) (explaining that a liberal construction of an EEOC charge may be appropriate even if the charge was prepared by an attorney rather than a *pro se* complainant). Accordingly, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Younis*, 610 F.3d at 362 (alteration in original) (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)) (internal quotation marks omitted).

Under Sixth Circuit law generally, "retaliation does not reasonably grow out of a substantive claim of discrimination if the retaliation occurred before the EEOC charge was filed." *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 110 (6th Cir. 2009). "However, where the charge of discrimination clearly alleges facts that would give rise to a retaliation claim, that retaliation claim is exhausted even though the retaliation occurred before the charge was filed." *Id.* The Sixth Circuit has found that a plaintiff has not exhausted administrative remedies where he: (1) "failed to check the box in his EEOC form entitled 'retaliation;'" and (2) "the narrative section [did not] include facts that would suggest he intended to bring an ADA retaliation claim." *Deister v. Auto. Club Ins. Ass'n.*, No. 15-1620, 2016 WL 2731606, at *6 (6th Cir. May 11, 2016).

Here, it is undisputed that Atkins did not check the retaliation box on her charge and that she did not amend the charge to add a retaliation claim. The Court, therefore, turns to the text of the charge to determine whether Atkins "include[s] facts that would suggest [she] intended to bring an ADA retaliation claim." *Id.*

In her filings in this Court, Atkins alleges that the basis for her retaliation claim is that Irwin and Strange terminated her after she engaged in the protected activity of asking for a reasonable accommodation during her interview with them on March 15, 2012. Her charge, however, states: "Mr. Irwin asked Mr. Strange if there was any type of 'special permission' I could request from Human Resources based on my medical condition. Mr. Strange said that he thought that I could ask HR for special permission. . . . I told Mr. Strange and Mr. Irwin that I would promptly contact HR to remedy any future issues regarding my diabetes" [Doc. 31-13 p. 3]. She goes on to state: "I believe that Dollar General discriminated against me because of my diabetes when it failed to provide me with a reasonable accommodation for my disability and then terminated my employment" [*Id.* at 4]. Later in the charge, Atkins again says her "employment was terminated based on my disability" [*Id.* at 4–5].

Notably, Atkins never mentions, or even implies, that she was terminated because she requested a reasonable accommodation. *See Dixon v. Ashcroft*, 392 F.3d 212, 217–18 (6th Cir. 2004) (finding that the plaintiff put the EEOC on notice of the alleged retaliation by stating in his charge that he was discriminated against because of the protected activity). In addition, Atkins does not describe any characteristics in the meeting that

29

lend support to the claim that she was terminated for a protected activity. *See Spengler*, 615 F.3d at 490 (finding that the plaintiff put the EEOC on notice of the alleged retaliation because the plaintiff described that the individual who made the termination decision was visibly upset when the plaintiff engaged in protected activity). In fact, according to the text of her charge, it was actually Irwin who first suggested a reasonable accommodation, not Atkins—lending support to the idea that Irwin would take no issue with Atkins requesting an accommodation.

The only indication plaintiff makes in her charge that could give rise to a retaliation claim is that her "employment was terminated based on my disability" [Doc. 31-13 pp. 4–5]. However, this allegation does not rise to the level of "clearly alleg[ing] facts that would give rise to a retaliation claim," and Atkins does not suggest that she intended to bring a retaliation claim. *Johnson*, 344 F. App'x at 110; *see also Deister*, 2016 WL 2731606, at *6. Consequently, Atkins failed to administratively exhaust her remedies in regard to her retaliation claim. The Court will, therefore, grant summary judgment in favor of defendant at to Atkins's retaliation claim.

## C.     Whether There is a Dispute as to a Material Fact

The ADA provides that an employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

30

The two remaining claims before the Court are plaintiffs' failure to provide reasonable accommodation and discriminatory discharge claim. Defendant and plaintiffs both move the Court to grant summary judgment in their favor on these claims because there is no dispute as to a material fact that they are each entitled to judgment as a matter of law. The Court addresses each of these claims in turn.

Because there are cross-motions for summary judgment before the Court, the Court must look at the evidence in the light most favorable to plaintiffs, and also look at the evidence in the light most favorable to defendant, to determine whether either party is entitled to summary judgment. *Matsushita Elec. Indus.*, 475 U.S. at 587; *Burchett*, 301 F.3d at 942.

### 1. Failure to Provide Reasonable Accommodation

The ADA imposes upon employers the duty to make reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A). In order to establish a *prima facie* case for failure to accommodate, a plaintiff must show that: "(1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011). Once a plaintiff establishes a *prima facie* case for a reasonable

31

accommodation claim, the burden shifts to the employer to demonstrate that an accommodation would impose an undue hardship. *Id.* at 983.

Defendant does not dispute that Atkins fulfills the first three prongs of the *prima facie* case. Defendant does, however, dispute that Atkins requested a reasonable accommodation and that defendant failed to provide such accommodation—the fourth and fifth prongs, respectively.

With regard to the fourth prong, defendant argues that Atkins did not sufficiently request an accommodation because she did not link her request to her disability and she did not use the formal process for requesting an accommodation. In determining whether Atkins requested an accommodation, the Court notes that an employer is "not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999) (citation omitted). An employee has the obligation to frame a request for accommodation in a way that "make[s] it clear from the context that it is being made in order to conform with existing medical restrictions." *Leeds v. Potter*, 249 F. App'x 442, 450 (6th Cir. 2007). The ADA, however, does not require an employee to use "magic words" like "accommodation" or even "disability" in order to fulfill her duty to request an accommodation. *Id.* at 449.

Defendant acknowledges that Atkins requested to keep her orange juice at the register, but asserts that the request is not adequate because Atkins did not link the request to her diabetes. There is sufficient evidence in the record, however, to establish

that defendant was aware that the request was due to Atkins's condition. Wanda Shown, a Store Manager for defendant, stated: "Atkins talked to me about her need to keep a snack or beverage with her when she worked at the register to prevent a possible hypoglycemic episode" [Doc. 31-3 ¶ 7]. Mary Jane Ray, another employee for defendant, also confirmed that she overheard these conversations and stated that she "heard Ms. Atkins explain to Wanda Shown that, due to her diabetes, it was especially important for her to keep juice with her when she was alone in the store working at the cash register" [Doc. 31-2 ¶ 4]. The Court finds that there is no dispute as to a material fact that Atkins adequately linked her request to her disability.

Defendant also points out that Atkins did not utilize defendant's formal process for requesting a reasonable accommodation. Instead, Atkins requested an accommodation from Shown, her supervisor. Defendant's own policies, however, make clear that asking a supervisor is appropriate mechanism for requesting an accommodation. Defendant's Employee Handbook provides that it is appropriate for an employee requesting an accommodation to speak with her "manager" [Doc. 31-15 p. 4], and defendant's Anti-Discrimination and Harassment Policy notes that it is appropriate to ask a "supervisor" [Doc. 31-9 p. 1]. Furthermore, Strange acknowledges that a verbal accommodation request to a supervisor is a valid form of requesting an accommodation under defendant's policy [Doc. 31-6 pp. 2–3]. It appears from the record, therefore, that Atkins did follow the procedures in place for requesting an accommodation.

Furthermore, there is no requirement under the ADA that an employee use a formal process. *See Leeds*, 249 F. App'x at 449 (finding that employees do not need to use "magic words" like "accommodation" or "disability"). Accordingly, the Court finds that there is no dispute as to a material fact that Atkins made a valid request for accommodation and plaintiffs satisfy prong four of their *prima facie* case.

Defendant also argues that plaintiffs cannot meet prong five of their *prima facie* case because defendant reasonably accommodated Atkins. First, defendant argues that Shown did not deny Atkins's request, but instead cautioned her to be careful of the cameras. Second, defendant argues that Atkins had other accommodations already available to her, including keeping juice in the break room, keeping juice in her apron, and keeping juice in defendant's cooler at the front of the store. In response, and in support of their motion for summary judgment, plaintiffs assert that defendant did not satisfy its obligation to engage in an interactive process with Atkins.

Once an employee requests an accommodation, "the employer has a duty to engage in an 'interactive process' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Melange v. City of Center Line*, 482 F. App'x 81, 84 (6th Cir. 2012) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007)). This "interactive process is mandatory, and both parties have a duty to participate in good faith." *Kleiber*, 485 F.3d at 871. "Employers who fail to engage in this interactive process in good faith face liability under the ADA if reasonable accommodations would have been possible."

34

*Burress*, 809 F. Supp. 2d at 813 (citing *Lafata v. Church of Christ Home for the Aged*, 325 F. App'x 416, 422 (6th Cir. 2009)). A claim for a failure to engage in an interactive process requires that the employee demonstrate that she "could have been reasonably accommodated but for the employer's lack of good faith." *Breitfelder v. Leis*, 151 F. App'x 379, 386 (6th Cir. 2005) (citation omitted).

"[A]n employee is not entitled to a particular reasonable accommodation if another reasonable accommodation is provided." *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 460 (6th Cir. 2002) (citations omitted). "Instead, the employer retains the 'ultimate discretion' to choose another effective accommodation." *Id.* at 459 (citing *Hankins v. The Gap*, 84 F.3d 797, 800–01 (6th Cir. 1996)). Plaintiffs bear the burden of demonstrating a genuine issue of material fact with regard to the inadequacy of offered alternatives. *Id.* at 460.

Here, defendant's obligation to engage in an interactive process arose when Atkins first requested permission to keep food or drink at the register. After Atkins requested an accommodation, the only information Shown gave her was that she should try to avoid being seen committing policy violations on camera [Doc. 31-3 ¶¶ 7–8]. During the audit interview, Atkins explained to Strange and Irwin that her disability necessitated the grazing violation [Doc. 31-13 p. 3]. At this point, Atkins was informed that she could talk to HR about getting special permission to keep food or drink at the register [Doc. 31-7 pp. 17–21]. Atkins, however, never had the opportunity to talk to HR because she was

terminated immediately [*Id.* at 17, 21]. Defendant, therefore, never engaged in any interactive process with Atkins.

Defendant points out that a failure to engage in an interactive process does not, on its own, give rise to a failure to accommodate claim. Instead, defendant argues that plaintiffs must first establish that the options already available to Atkins were not effective accommodations. Defendant is correct that an employer only fails to participate in the interactive process if Atkins can demonstrative that she could have been reasonably accommodated but for defendant's lack of good faith. *Breitfelder*, 151 F. App'x at 386. A viable failure to accommodate claim requires an employee to have actually been deprived of a needed accommodation. Defendant asserts that plaintiff had the following accommodations already available to her: (1) keeping juice at the register and avoiding the cameras; (2) keeping juice in the break room; (3) keeping juice in her apron; and (4) keeping juice in the front cooler.

Turning to defendant's first alleged accommodation, defendant argues that Shown did not deny Atkins's request, but instead cautioned her to be careful of the cameras. This would not qualify as a reasonable accommodation as Shown made clear that it was against the company's policy to keep juice at the register [Doc. 31-3 ¶¶ 7–8]. Shown's decision to overlook the violation does not qualify as an accommodation as it is unclear that other managers, or those reviewing camera footage, would do the same.

36

Keeping orange juice in the break room also may not qualify as a reasonable accommodation. Atkins emphasized that she needed to keep food or drink at the cash register particularly in circumstances where she was working alone [*Id.* ¶ 7]. This is because she was trained not to leave the front of the store unsecured [Doc. 31-4 pp. 12–14, 29–30, 38]. In a scenario where she was working alone, leaving the register to go to the break room would force Atkins to violate company policy. Additionally, the fact that Atkins was aware of her ability to keep juice in the break room, yet still asked for an accommodation, is evidence that her ability to keep juice in the break room was not adequate. The Court will not find, therefore, that this qualifies as a reasonable accommodation as a matter of law.

Regarding defendant's argument that Atkins could keep her juice in her apron, this option was never presented to Atkins. Defendant argues that the option of keeping juice in her pocket "is obvious" and the ADA does not require a "step-by-step" process when "the appropriate reasonable accommodation [is] so obvious" [Doc. 49 p. 12 (quoting 29 C.F.R. Pt. 1630, App.)]. The Court, however, does not find that this was, necessarily, an obvious solution. In fact, Atkins states that she did not attempt to keep juice in her apron because she was constantly moving around at work and keeping juice in her apron would not be conducive to her activity level [Doc. 28-1 pp. 16–17]. Furthermore, because there was no interactive process, Atkins was not aware that keeping juice in her apron was in line with defendant's policies.

Lastly, defendant argues that Atkins could have stored groceries in the defendant's display cooler near the front of the store [Doc. 31-4 pp. 18–23].  Atkins admits that she occasionally did store groceries in the front cooler, but that it was against store policy to do so [*Id.*].  Because there is evidence that it was against store policy, the Court will not find, as a matter of law, that this constituted a reasonable accommodation.

While the Court does not find, as a matter of law, that the options defendant suggests were available to Atkins constitute reasonable accommodations, the Court also does not find that these options, necessarily, are not reasonable accommodations. Looking at the evidence in the light most favorable to defendant, one of these accommodations could be viable and a reasonable jury could find for the defendant on this point.

The Court notes that defendant has not attempted to make a showing that keeping juice by the register would cause it undue hardship.  Because the Court finds that there is dispute as to a material fact regarding the fifth element of plaintiffs' *prima facie* case, the Court will deny both defendant and plaintiffs' motions for summary judgment as to the reasonable accommodation claim.

### 2.      Discriminatory Discharge

Plaintiffs also are pursuing a claim under a discriminatory discharge theory of liability.  Defendant and plaintiffs both move the Court for summary judgment in their favor on this claim.

38

The ADA bars discrimination that is a "but-for" cause of the employer's adverse action. *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc). "[A] plaintiff may attempt to establish unlawful discrimination by introducing direct evidence of discrimination . . . or by introducing indirect evidence of discrimination to shift the burden of production to the employer to articulate a legitimate, nondiscriminatory reason for making the adverse employment decision." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) (citations omitted), *abrogated on other grounds by Lewis*, 681 F.3d at 315–16 (en banc).

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (citations omitted). The Sixth Circuit has described direct evidence as that which "*requires* the conclusion that unlawful [discrimination] was a motivating factor in the employer's action." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2007) (emphasis in original). Direct evidence includes "evidence that the employer relied on the plaintiff's disability in making its employment decision." *Monette*, 90 F.3d at 1178.

In the absence of direct evidence of discrimination, courts analyze ADA discrimination claims following the burden shifting approach of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under the *McDonnell Douglas* burden-shifting framework, plaintiff must first set out a *prima facie* case of discrimination. *Williams*, 614 F. App'x at 253. After plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory

39

reason" for the employment action. *Id.* at 253–54. If defendant does so, then the burden returns to plaintiff to prove that the stated reason is a pretext for association disability discrimination. *Id.*

"The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir. 1997). Thus, the Court must determine whether plaintiffs' alleged evidence of discriminatory discharge can be construed as direct evidence, which would entitle plaintiffs to proceed to a jury trial, or circumstantial evidence, which would then invoke the *McDonnell Douglas* burden-shifting analysis.

The parties are in dispute as to whether the Court should categorize the facts in the record as direct or indirect evidence of a discriminatory discharge. Plaintiffs put forth two theories of discriminatory discharge. First, plaintiffs contend that that defendant terminated Atkins for conduct that occurred because of her disability. Second, plaintiffs argue that Atkins's termination resulted from defendant's failure to accommodate her. Plaintiffs contend that both theories are built on a foundation of direct evidence. Defendant, however, argues that this case should be analyzed under the indirect evidence path. The Court will first address whether either theory contains facts that constitute direct evidence.

### a. Direct Evidence

Plaintiffs submit that defendant terminated Atkins unjustly and illegally under the ADA, as she only violated the anti-grazing policy to avoid a disability-related

40

hypoglycemic episode. "An employer may only discipline an employee for disability-related conduct if the conduct rule is job-related and consistent with business necessity." *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 739 (6th Cir. 2015) (citation omitted) (internal quotation marks omitted). Plaintiffs contend that the record demonstrates that Atkins's grazing violation was disability-related conduct and the conduct rule prohibiting it is not job-related or consistent with business necessity.

The Court notes that none of the cases plaintiffs cite in support of this disability-related conduct theory of discriminatory discharge analyze the facts contained therein under a direct evidence standard.[4] The Court, therefore, is inclined to apply an indirect evidence standard.

---

[4] While many of these cases contain very different facts from the instant case, it is still telling that not one of the cases plaintiffs cited in support of this theory found any direct evidence. *See Yarberry*, 625 F. App'x at 735 (noting that the plaintiff did not dispute the district court's finding that the case was one of indirect evidence); *Macy v. Hopkins Cty. Sch. Bd. of Educ.*, 484 F.3d 357, 363–64 (6th Cir. 2007) (noting that it applied the indirect evidence standard because the plaintiff did not sufficiently address direct evidence on appeal); *Chandler v. Specialty Tires of Am. (Tenn.)*, 134 F. App'x 921, 927 (6th Cir. 2005) (noting that the supervisor who terminated the plaintiff made no reference to a disability); *Brohm v. JH Props., Inc.*, 149 F.3d 517, 520–21 (6th Cir. 1998) (not even considering a direct evidence standard); *Mararri v. WCCI Steel, Inc.*, 130 F.3d 1180 (6th Cir. 1997) (not explicitly reaching which standard applied but finding the employer's justification for termination was legitimate and nondiscriminatory); *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846–49 (6th Cir. 1995) (not even considering a direct evidence standard); *Teahan v. Metro-North Commuter R. Co.*, 951 F.2d 511, 514 (2d Cir. 1991) (finding that burden shifting applies where the employer "disclaims reliance" on the handicap); *EEOC v. Walgreen Co.*, 34 F. Supp. 3d 1049, 1053 (N.D. Cal. 2014) (addressing disability-related conduct in determining whether the defendant had a "legitimate nondiscriminatory justification" for termination); *Fritz v. Mascotech Auto. Sys. Grp., Inc.*, 914 F. Supp. 1481, 1488–96 (E.D. Mich. 1996) (though not directly applying a burden shifting analysis but denying summary judgment on the ground a jury could find that the defendant's adverse decision was improperly influenced by the plaintiff's disability).

41

Furthermore, the Court notes that a determination of whether conduct is "job-related and consistent with business necessity may rest of several factors, including the manifestation or symptom of a disability affecting an employee's conduct, the frequency of occurrences, the nature of the job, the specific conduct at issue, and the working environment." *Yarberry,* 625 F. App'x at 739. A determination that rests on such a fact-specific inquiry does not fall into the very narrow category of direct evidence cases and must require an inference of some kind. *See Rowan*, 360 F.3d at 548. As such, the Court finds that the disability-related conduct theory should be analyzed under indirect evidence.

The Court now turns to whether plaintiffs' second theory of discriminatory discharge should be analyzed under direct evidence. Plaintiffs contend that had defendant provided Atkins with a reasonable accommodation by allowing her to keep her own personal juice with her at the register, she would not have been forced to violate the defendant's anti-grazing rule, and would not have been terminated.

When determining whether claims of discriminatory discharge based on a failure to accommodate should be analyzed under the direct or indirect evidence path, courts have recognized "some tension in the caselaw concerning the appropriate summary judgment standard for these related theories of liability." *See, e.g.*, *Hildebrand v. Dollar General Corp.*, No. 3:11-cv-00554, 2013 WL 3761291, at *5 (M.D. Tenn. July 16, 2013) (recognizing that this tension exists in the Sixth Circuit); *see also Humphrey v. Mem'l Hosps Ass'n*, 239 F.3d 1128, 1139–40 (9th Cir. 2001) (observing that "often the claims

42

are, from a practical standpoint, the same," where "the consequence of the failure to accommodate is, as here, frequently unlawful termination").

The Sixth Circuit has reasoned that because the ADA prohibits discrimination due to a disability and the ADA defines discrimination to include failing to provide a reasonable accommodation, then "claims premised on an employer's failure to offer reasonable accommodation necessarily involve direct evidence." *Kleiber*, 485 F.3d at 868 (applying the direct evidence standard for a failure to accommodate claim); *see also McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997) (citing *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 143 (2d Cir. 1995)) (accepting and applying the Second Circuit's principle that a failure to accommodate which "leads to discharge for performance inadequacies resulting from the disabilities, amount[s] to a discharge solely because of the disabilities"). In such circumstances, "if the fact-finder accepts the employee's version of the facts, no inference is necessary to conclude that the employee has proven this form of discrimination." *Kleiber*, 485 F.3d at 869. The Sixth Circuit, however, has not always followed this approach. *See Whitfield v. Tennessee*, 639 F.3d 253, 256, 258–59 (6th Cir. 2011) (applying the *McDonell Douglas* framework where the plaintiff alleged discriminatory discharge based on the defendant's failure to provide reasonable accommodations).

Here, plaintiffs argue that they are entitled to summary judgment, based on direct evidence, because defendant terminated Atkins for conduct that was the direct result of its own failure to accommodate her. Upon review, even if the Court were to apply the direct

43

evidence standard for this theory of discriminatory discharge, plaintiffs would not be entitled to summary judgment. The Court has already found that there is a dispute as to a material fact that defendant even failed to accommodate Atkins. Consequently, there must also be a dispute as to a material fact that defendant engaged in a discriminatory discharge resulting from that failure to accommodate.

As analyzed below, however, defendants are not entitled to summary judgment even when the Court analyzes this theory as indirect evidence of discrimination. Because the Court determines that neither party is entitled to summary judgment under the direct or the indirect path, the Court declines to reach whether a failure to accommodate leading to a discriminatory discharge should be analyzed under direct evidence.

### b.      Indirect Evidence

The Court now turns to its analysis of discriminatory discharge based on a failure to accommodate under the indirect evidence standard. For plaintiffs to make out a *prima facie* case for discriminatory discharge, they must show that Atkins: (1) is disabled; (2) she was otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) defendant knew or had reason to know of her disability; and (5) she was replaced, the job remained open, or similarly situated non-protected employees were treated more favorably. *Hopkins Elec. Data Sys. Corp.*, 196 F.3d 655 (6th Cir. 1999). Defendant only challenges plaintiffs' ability to satisfy the fifth prong of the *prima facie* case. Defendant argues that Mark Beaver and Sandra Viefield constitute similarly situated employees and they were terminated at the

same time as Atkins and for the same policy violation. Plaintiffs counter this argument by asserting that Beaver and Viefield do not constitute similarly situated employees.

In determining whether employees are similarly situated, courts shall consider "whether the individuals have dealt with the same supervisor, have been subject to the same standard[,] and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2007) (citations omitted) (internal quotation marks omitted). The role of the Court is to make an "independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovish v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

Here, Atkins is an insulin-dependent diabetic who asked for an accommodation to keep orange juice at the register in case of a hypoglycemic attack. When an attack occurred, she violated defendant's anti-grazing policy. Neither Beaver nor Viefield violated the anti-grazing policy due to a medical emergency [Doc. 31-6 p. 15]. These circumstances constitute "differentiating or mitigating circumstances that would distinguish their conduct or [defendant's] treatment of them." *See Wright*, 455 F.3d at 710. Beaver and Viefield, therefore, do not constitute similarly situated employees and their termination cannot negate plaintiffs' ability to make a *prima facie* case.

45

There is also evidence in the record that employees commonly violated the anti-grazing policy and that defendant did not strictly enforce the policy [Doc. 31-3 ¶¶ 11–12]. Following the Court's analysis above, and assuming these employees did not act out of a medical emergency, they would also not qualify as similarly situated. In making an "independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee," the fact that the defendant disciplined Atkins when she grazed due to a medical emergency and did not discipline others who grazed without any mitigating circumstances weighs in favor of an inference of discrimination. *See Ercegovish*, 154 F.3d at 352. While the evidence presented does not establish as a matter of law that similarly situated non-protected employees were treated more favorably, the Court finds that a reasonable jury could find that plaintiffs satisfy the fifth element and make out a *prima facie* case.

As plaintiffs have raised a question of fact as to a *prima facie* showing of discrimination, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for plaintiff's termination. *McDonnell Douglas Corp.*, 411 U.S. at 802–04; *Williams*, 614 F. App'x at 253–54 (citing *Talley*, 542 F.2d at 1105)). Defendant's burden is "one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Defendant submits that plaintiff was terminated for violating the anti-grazing policy. Even if the Court assumes this constitutes a

legitimate, nondiscriminatory reason for termination, a reasonable jury could find for plaintiffs in the pretext analysis, which the Court turns to next.[5]

At the pretext stage, plaintiffs must prove that defendant's proffered reason is "merely a pretext for illegal discrimination." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996). Plaintiffs may do so by showing that the proffered reason: (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate that action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by*, *Geiger v. Tower Auto.,* 579 F.3d 614 (6th Cir. 2009). The Sixth Circuit has retreated from formulaic application of these categories and stresses that they serve only as a tool to assist in the court in addressing the ultimate inquiry: "did the employer fire the employee for the stated reason or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). The Court also notes that the ultimate inquiry is whether discrimination is a "but-for" cause of Atkins's termination. *See Lewis*, 681 F.3d at 321.

Plaintiffs submit that defendant's stated reason for Atkins's termination was insufficient to motivate that action.[6] If Atkins was terminated because defendant failed to

---

[5] Plaintiffs argue that this stated reason does not constitute a legitimate, nondiscriminatory reason. According to plaintiffs, Atkins violated the anti-grazing policy because defendant failed to accommodate her disability—resulting in defendant's stated reason being discriminatory.

[6] Defendant argues that to prove insufficiency, plaintiffs are required to show evidence that other employees not in the protected class were not fired [Doc. 29 pp. 18–19 (citing *Lawroski*, 570 F. App'x at 594–95]. *Lawroski*, however, provides that showing evidence of other employees is only one avenue, among several, for showing insufficiency. *Id.*

accommodate her, that would constitute a discriminatory discharge, and the grazing violation would be insufficient to motivate termination.

Plaintiffs contend that had defendant provided Atkins with a reasonable accommodation by allowing her to keep her juice with her at the register, she would not have been forced to violate the anti-grazing rule, and would not have been terminated. Defendant counters this argument by noting that Atkins was terminated for choosing to consume defendant's merchandise before paying for it—which is not the reasonable accommodation she requested. Defendant argues that she could have instead chosen to drink juice in the break room, store her own juice in defendant's front display cooler, or keep juice in her apron. Instead of selecting one of these options, defendant contends that Atkins chose to commit the terminable offense of grazing.

While the record establishes that Atkins knew grazing was not allowed, it also establishes that she believed leaving the store unattended so she could take juice from the break room and storing juice in the front cooler were not allowed [Doc. 31-4 pp. 12–14, 18–23, 28–29, 38]. She further asserts that she did not believe keeping juice in her apron was feasible [*Id.* at 16–17]. Defendant faults Atkins for choosing the wrong policy to violate.

As discussed previously, defendant failed to engage in an interactive process with Atkins. Had defendant engaged in this process, there is a question of fact as to whether Atkins would have engaged in the grazing violation. It was not Atkins's responsibility to

unilaterally explore all possible accommodations and to determine which violation the defendant would prefer.[7]

The ADA prohibits defendant from terminating Atkins for conduct that occurred as a direct result of its own failure to accommodate her.  The Court finds that there is a genuine dispute of material fact as to whether defendant's proffered reason is merely a pretext for illegal discrimination.  The Court will, therefore, deny defendant's motion for summary judgment as to plaintiffs' discriminatory discharge claim.

Having already determined that there is a dispute as to a material fact that plaintiffs can make out a *prima facie* case for discriminatory discharge, there is no need for the Court to analyze pretext under plaintiffs' second theory for discriminatory discharge: that defendant terminated plaintiff for disability-related conduct.  Plaintiffs will not prevail on summary judgment as to discriminatory discharge.  In sum, the Court will deny defendant and plaintiffs' motions for summary judgment as to discriminatory discharge.

## IV.    Conclusion

For these reasons, the Court **DENIES as moot** plaintiff's Motion for Partial Summary Judgment Regarding Defendant's Affirmative Defense Alleging the EEOC Failed to Conciliate in Good Faith [Doc. 24], **DENIES** plaintiffs' Motion for Partial Summary Judgment [Doc. 31], **DENIES** defendant's Motion to Strike Declaration of

---

[7] The record also shows that Atkins had already reported grazing violations to her immediate supervisor without any repercussion.  This evidence tends to support that Atkins was considering which option defendant would prefer.

Wanda Shown [Doc. 40], **DENIES** defendant's Motion to Strike Declaration of Katharine K. Kores [Doc. 47], and **GRANTS** defendant's Motion to Permit the Deposition of Katharine Kores Out of Time [Doc. 57]. The Court also **GRANTS in part and DENIES in part** defendant's Motion for Summary Judgment [Doc. 28] and **DISMISSES** intervening plaintiff Atkins's claim for retaliation.

IT IS SO ORDERED.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE