UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LINDA K. ATKINS, | ) | |
| | ) | |
| Intervening Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:   3:14-CV-441-TAV-HBG |
| | ) | |
| DOLGENCORP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on Defendant's Motion for Reconsideration of the Court's Order Denying Defendant's Motion for Summary Judgment as to Timeliness of Plaintiffs' Claims or, Alternatively, Certification of Interlocutory Appeal [Doc. 96], Intervening Plaintiff's Motion for Reconsideration of Court's Order Denying Plaintiffs' Motion for Partial Summary Judgment [Doc. 99], and Defendant's Motion for Reconsideration Based Upon Newly Discovered Evidence [Doc. 125]. The parties filed responses, replies, and supplemental briefs in response and in further support of these motions [Docs. 101, 102, 104, 105, 122, 127, 128, 129, 130, 133]. Defendant and intervening plaintiff ask the Court to reconsider portions of its Memorandum Opinion and Order issued on July 7, 2016 [Doc. 66]. Having reviewed the parties' arguments, the

record in this case, and relevant law, the Court will deny all motions for reconsideration [Docs. 96, 99, 125].

## I.    Background[1]

Intervening plaintiff, Linda Atkins, was an employee of defendant, Dolgencorp, LLC [Doc. 28-1 pp. 4, 6, 69]. Defendant terminated Atkins and she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 17, 2012—187 days after her discharge [Doc. 28-6 p. 2]. Following its investigation of the charge, the EEOC filed a complaint against defendant on September 23, 2014, asserting claims under the Americans with Disabilities Act ("ADA") for: (1) failure to provide a reasonable accommodation; and (2) discriminatory discharge [Doc. 1]. Atkins filed her intervenor complaint on December 18, 2014, asserting claims under the ADA for: (1) failure to provide a reasonable accommodation; (2) discriminatory discharge; and (3) retaliation for activity protected by the ADA [Doc. 12].

On March 11, 2016, defendant moved for summary judgment on all claims [Doc. 28]. Also on March 11, 2016, the EEOC and Atkins ("plaintiffs") moved for partial summary judgment on their failure to accommodate and discriminatory discharge claims [Doc. 31]. On July 7, 2016, the Court issued a Memorandum Opinion and Order granting summary judgment in favor of defendant as to Atkins's retaliation claim, and denying the parties' motions for summary judgment as to the failure to accommodate and

_____

[1] Although the Court discusses certain facts relevant to the Court's analysis, the Court presumes familiarity with the facts of this case as well as the analysis underlying the Court's July 7, 2016, Memorandum Opinion and Order [Doc. 66].

2

discriminatory discharge claims [Doc. 66]. Defendant and Atkins now move the Court to reconsider portions of the Court's July 7, 2016, Memorandum Opinion and Order.

## II.     Standard of Review

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and the "inherent power" that district courts possess, a court may reconsider interlocutory orders or reopen portions of a case before a final judgment is entered. *See Johnson v. Dollar Gen. Corp.*, No. 2:06-CV-173, 2007 WL 2746952, at *2 (E.D. Tenn. Sept. 20, 2007) (citing *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). This standard "vests significant discretion in district courts." *Rodriguez*, 89 F. App'x at 960 n.7. The Sixth Circuit has stated that a district court's authority allows a court to "afford such relief from [interlocutory orders] as justice requires." *Id.* at 959 (citations omitted). This traditionally includes when the court finds there has been an intervening change of controlling law, there is new evidence available, or there is a need to correct a clear error or prevent manifest injustice. *Id.*

## III.     Defendant's Motions for Reconsideration

Defendant asks the Court to reconsider its July 7, 2016, Memorandum Opinion and Order for two reasons. First, defendant argues that the Court was in clear error when finding that the EEOC charge foundational to this action was subject to a 300-day filing deadline, rather than a 180-day filing deadline. Should the Court decline to reconsider this portion of the opinion, defendant asks that the Court certify the issue for

3

interlocutory appeal. Second, defendant asks the Court to reconsider its decision to deny defendant's motion to strike Katharine Kores's declaration and the worksharing agreement. Defendant presents the Court with newly discovered evidence in that regard.

Should the Court find for defendant on either issue, defendant argues that plaintiffs' claims are time-barred. The Court will first address defendant's arguments regarding the filing deadline and whether to certify the issue for interlocutory appeal. Then, the Court will address the Kores declaration and worksharing agreement.

## A.    Filing Deadline

A plaintiff asserting an ADA claim must comply with the administrative exhaustion procedures set forth in 42 U.S.C. § 2000e-5. 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5). Section 2000e-5 provides in relevant part:

> A charge under this statute shall be filed within one hundred and eighty days after the alleged unlawful employment practice . . . , except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with *authority to grant or seek relief from such practice* . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.

42 U.S.C. § 2000e-5(e)(1) (emphasis added). The EEOC's regulations provide further insight on § 2000e-5 and state that:

> A jurisdiction having a FEP agency without subject matter jurisdiction over a charge (e.g., an agency which does not cover sex discrimination or does not cover nonprofit organizations) is equivalent to a jurisdiction having no FEP agency. Charges over which a FEP agency has no subject matter jurisdiction are filed with the Commission upon receipt and are timely filed if received by the Commission within 180 days from the date of the alleged violation.

4

29 C.F.R. § 1601.13.

Defendant argues plaintiffs' allegation that defendant failed to reasonably accommodate Atkins is foundational to plaintiffs' remaining claims for failure to accommodate and discriminatory discharge. Defendant asserts that the plain meaning of the phrase "authority to grant or seek relief from such practice" in § 2000e-5 requires that the state agency with which Atkins filed her charge in this case, the Tennessee Human Rights Commission ("THRC"), have the authority to grant or seek relief from defendant's alleged failure to accommodate for the 300-day limit to apply. 42 U.S.C. § 2000e-5(e)(1). Because the Tennessee Disability Act ("TDA") does not recognize the practice of reasonable accommodation, defendant argues the THRC does not have the authority to grant or seek relief from the challenged practice. As such, defendant asserts that Atkins's charge had to have been filed within 180 days, rather than within 300 days, of the alleged unlawful employment practice. In its Memorandum Opinion and Order, the Court applied the 300-day filing deadline to Atkins's charge [Doc. 66 p. 27].

The Court notes that it is common for discrimination cases to involve multiple related claims and theories of relief, some of which may be successful under state law, and some of which may not. Courts, the EEOC, and litigants (plaintiffs and defendants alike) have long operated under the notion that claims premised on a failure to accommodate theory, like all other disability claims, are subject to a 300-day administrative filing deadline applicable in Tennessee [Doc. 128-1 p. 2]. *See, e.g.*, *Oliver v. Titlemax*, 149 F. Supp. 3d 857, 862–68 (E.D. Tenn. 2016); *Cockrill v. Metro. Gov't of*

*Nashville/Davidson Cty.*, No. 3-13-0587, 2015 WL 136271, at *3–4 (M.D. Tenn. Jan. 9, 2015); *Tate v. Sam's E., Inc.*, No. 3:11-CV-87, 2013 WL 1320634, at *13 n.9 (E.D. Tenn. Mar. 29, 2013); *Arnold v. Federal-Mogul Prods.*, No. 2:11-126, 2013 WL 652524, at *1– 2 (M.D. Tenn. Feb. 21, 2013); *Holleman v. BellSouth Telcoms., Inc.*, No. 3:09-CV-311, 2011 WL 3876590, at *7–8 (E.D. Tenn. Sep. 1, 2011). Although courts have consistently applied the 300-day deadline to reasonable accommodation claims in Tennessee, the Court notes that none of these cases directly analyze the statutory interpretation argument defendant now makes.

A New Hampshire district court, however, did analyze the argument defendant now makes and found that the 300-day filing deadline applied in *Moher v. Chemfab Corp.*, 959 F. Supp. 70 (D.N.H. 1997). Similar to the instant case, the defendant in *Moher* argued that the plaintiff's complaint was based on the defendant's failure to provide reasonable accommodation—a claim that was not actionable under New Hampshire law. *Id.* at 71–72 (citation omitted). Consequently, the defendant argued that the New Hampshire state agency lacked jurisdiction over that complaint, and therefore, the plaintiff had to have filed the charge with the EEOC within 180 days. *Id.* at 72.

The district court in *Moher* rejected the defendant's argument. To support its ruling, the court pointed to the Supreme Court case *Equal Employment Opportunity Commission v. Commercial Office Products Co.*, 486 U.S. 107 (1988). In *Commercial Office Products*, "[t]he Supreme Court held that applicable filing periods for EEOC complaints are not affected by different state filing periods, because otherwise the EEOC

would be embroiled 'in complicated issues of state law.'" *Moher*, 959 F. Supp. at 72 (quoting and discussing *Commercial Office Prods.*, 486 U.S. at 124). The Supreme Court emphasized that it was important "to establish 'a rule that is both easily understood by complainants and easily administered by the EEOC.'" *Id.* (quoting and discussing *Commercial Office Prods.*, 486 U.S. at 124). Furthermore, the Supreme Court also determined that "whether a state agency has 'authority to grant or seek relief' with respect to a discrimination complaint is a matter properly decided based on a *general* view of the enabling legislation establishing the state agency." *Id.* (quoting and discussing *Commercial Office Prods.*, 486 U.S. at 124). In light of the Supreme Court precedent in *Commercial Office Products*, the court in *Moher* found that because the New Hampshire agency protected against disability discrimination generally, it was an appropriate and properly authorized agency with which to file employment disability discrimination charges including a charge alleging a failure to accommodate. *Id.* at 72–73.

The Court notes that *Moher* did not directly address the plain language of § 2000e-5(e)(1), which defendant argues mandates the application of the 180-day filing deadline. This Court, however, finds that the plain language of the statute is susceptible to multiple meanings. Defendant argues that the 180-day limit must apply in this case because the THRC does not have the authority to grant or seek relief from the challenged practice, that is, a failure to reasonably accommodate. However, another permissible reading of the text is that the THRC must be able to grant or seek relief from the practice of

disability discrimination more generally.  The Court finds that this reading is in line with the text of the statute and with the principles of interpretation detailed in the Supreme Court's ruling in *Commercial Office Products*.

The THRC's power and duties include, in pertinent part, the power to "receive initiate, investigate, seek to conciliate, hold hearings on and pass upon complaints alleging violations of [the TDA]."  *See* T.C.A. § 4-21-202(9).  Even though the TDA differs from the ADA in what constitutes discrimination on the basis of disability and how to prove discrimination on the basis of disability, the TDA does cover the practice of disability discrimination generally.  By checking the "disability" box on her charge, Atkins alleged disability discrimination, and thus, alleged that defendant violated the TDA [Doc. 31-13].  Consequently, the THRC has the authority to grant or seek relief over the practice that Atkins challenged, that is, disability discrimination generally.  The Court finds, therefore, that plaintiffs' interpretation of § 2000e-5(e)(1) is consistent with the text of the statute.

The Court notes that ruling in defendant's favor on this issue would have complex implications for applicants, the EEOC, and the courts.  In *Commercial Office Products*, the Supreme Court discouraged interpreting discrimination laws in ways that would involve the interpretation of complicated state law issues, particularly because in discrimination cases, "laymen, unassisted by trained lawyers, initiate the process."  *See Commercial Office Products*, 486 U.S. at 123–24.  The Supreme Court also emphasized

that courts should establish rules that are "both easily understood by complainants and easily administered by the EEOC." *See id.* at 124.

Here, defendant is asking the Court to make an on the merits determination as to whether defendant violated the TDA before deciding which filing deadline applies. The Court notes that the TDA and the ADA differ in respects other than whether they require accommodations. For example, unlike the ADA, the TDA does not prohibit discrimination on the basis of association with a person with a disability or based on an employer's medical inquiries or testing procedures. *Compare* 42 U.S.C. § 12112(b)(4), (d) *with* T.C.A. § 8-50-103. If the Court accepts defendant's argument, employers will be able to argue in future cases that the THRC would not have jurisdiction over any claims of discrimination on these bases. The TDA and the ADA also have different causation standards. *Compare Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (noting that the ADA has a "but for" causation standard) *with* T.C.A. § 8-50-103(b) (noting that the TDA requires that the adverse action was "solely because of" the employee's disability). Adhering to defendant's restrictive interpretation of § 2000e-5(e)(1) would require a determination of whether a practice was "solely because of" a disability before determining whether the 300-day filing deadline applies. As such, applicants, the EEOC, and courts would be required to make complex state law determinations before deciding which filing deadline applies.

In addition, these determinations would not be limited to ADA claims. In deciding which limitations period applies, applicants, the EEOC, and the courts would

9

also need to determine whether theories of discrimination brought under Title VII—to which the same limitations statute applies—are viable under state law. This result is contrary to the Supreme Court's policy considerations in *Commercial Office Products* which encourage rules that are "easily understood." 486 U.S. at 123–24.

The Sixth Circuit's general practice in determining which filing deadline applies also supports the application of a 300-day deadline. In discussing whether a 180-day or 300-day filing deadline applies, the Sixth Circuit has not analyzed complicated state law issues, but instead has consistently focused on the simple determination of whether the charge was filed in a "deferral state" or not. *See e.g., Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001); *EEOC v. Penton Indus. Pub. Co.*, 851 F.2d 835, 837 (6th Cir. 1998); *Hall v. Ledex, Inc.*, 669 F.2d 397, 398 (6th Cir. 1982). Following that practice, the 300-day deadline applies simply because Tennessee is a "deferral state." *See, e.g., Speck v. City of Memphis*, 370 F. App'x 622, 625 (6th Cir. 2010); *McDaniel v. Kindred Healthcare*, No. 1:06-CV-193, 2008 WL 522844, at *8 (E.D. Tenn. Feb. 26, 2008).

The defendant cites several cases in support of its interpretation, but the Court finds that they are distinguishable. The defendant points to *Williams v. E.I. du Pont de Nemours & Co.*, No. 14-382, 2015 WL 4133067 (M.D. La. July 8, 2015). In *Williams*, the district court held that because Louisiana's equal employment law did not prohibit retaliation, the 300-day deferral filing deadline did not apply to retaliation claims. *Id.* at *10. Courts and the EEOC, however, have always treated retaliation as separate from other forms of discrimination. *See, e.g., Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct.

10

2517, 2519, 2528 (2013) (holding that different causation standards apply to traditional Title VII discrimination claims and Title VII retaliation claims and also noting that retaliation claims are authorized under separate statutory provisions contained within anti-discrimination laws).   Under the "cause of discrimination" section of the standard EEOC form, there is a separate box for "retaliation" in addition to the boxes for "race," "color," "sex," "religion," "age," "national origin," and "disability" [Doc. 31-13].   In contrast, the EEOC form does not have a separate box for failure to provide a reasonable accommodation.   Instead, the failure to provide a reasonable accommodation falls under the umbrella of disability discrimination.   In *Williams*, therefore, the court was correct to conclude that the state agency did not have the authority to grant or seek relief from the general practice of retaliation.   Here, however, the THRC does have the authority to grant or seek relief from the general practice of disability discrimination, which in this case includes allegations that defendant failed to reasonably accommodate Atkins.

Other cases cited by defendant involve situations in which state law did not apply to the case because of the location where the alleged discriminatory practices took place. *Morris v. Eberle & BCI, LLC*, No. 1:13-06113, 2014 WL 4352872, at *4–6 (D.N.J. Sept. 3, 2014) (state law did not apply to actions occurring in a federal enclave located within the state); *Busari-Ibe v. AGS-AECOM Co.*, No. 4:11-CV-625, 2012 WL 12090207, at *3–4 (N.D. Tex. Jan. 25, 2012) (state law did not apply to actions occurring outside of the United States); *Judkins v. St. Joseph's Coll. of Med.*, 483 F. Supp. 2d 60, 65–66 (D. Me. Apr. 20, 2007) (presumption against extraterritorial application of state law precluded

11

application of anti-discrimination laws to events occurring outside of the United States). Here, in contrast, Atkins was under the protection of Tennessee's disability discrimination laws when the alleged discriminatory practice took place.

Unlike the simple determination that a state does not protect against a general type of discrimination, or that a state's discrimination laws do not extend to a particular defendant or location, the avenue defendant is asking the Court to travel would require applicants, the EEOC, and courts to resolve complex state law issues before deciding which filing deadline applies. Such a result is contrary to the Supreme Court's decision in *Commercial Office Products*.

Defendant also argues that the deposition of EEOC District Director Katharine Kores confirms that a failure to provide reasonable accommodation is a distinct employment practice over which the THRC has no authority to grant relief, and consequently, the 180-day deadline should apply [Doc. 127 p. 3]. In Kores's deposition, counsel for defendant posed the question: "What are some unlawful employment practices under the ADA?" [Doc. 127-1 p. 3]. In response, Kores mentioned "Failure to hire, discharge, pay, terms and conditions of employment, harassment, reasonable accommodation" [*Id.*]. The Court recognizes that a failure to provide a reasonable accommodation can be considered a practice. The Court finds, however, a failure to provide a reasonable accommodation is too specific to be a considered a practice as contemplated in § 2000e-5(e)(1), particularly in light of the Sixth Circuit jurisprudence previously discussed. *See e.g.*, *Amini*, 259 F.3d at 498 (focusing solely on the simple

12

determination of whether the charge was filed in a deferral state in deciding the applicable limitations period). Consequently, Kores's identification of a failure to accommodate as a distinct practice has no bearing on the Court's determination that the word practice in § 2000e-5(e)(1) should refer to disability discrimination generally in this context.

While not dispositive on this issue, Kores's deposition is actually further evidence that the EEOC looks to whether state agencies have subject matter jurisdiction over the particular type of defendant as well as the particular category of charge in determining whether the 300-day limit applies [*See* Doc. 130-1 pp. 10–11, 13–14 (using race, gender, disability, and religious discrimination as examples of categories)]. Her testimony also further supports that defendant's interpretation of the statute would be unworkable in practice. She states that her staff at the EEOC is not trained to examine "all the possible minutia" of a charge to determine whether federal or state law applies to each claim [*Id.* at 12]. Rather, they focus on the broader category of discrimination [*Id.*]. Kores's description of the inner workings of the EEOC is in line with what the Supreme Court contemplated in *Commercial Office Products* and consistent with the policy issues previously discussed. 486 U.S. at 124 (noting that courts should establish rules that are "easily administered by the EEOC"). As such, the Court finds that Kores's testimony further supports that the word practice in § 2000e-5(e)(1) should be interpreted to mean disability discrimination generally in this context.

13

In sum, the Court finds that it was not in clear error in determining that the 300-day filing deadline applies.[2]

**B.      Interlocutory Appeal of Filing Deadline Determination**

Because the Court finds that a 300-day filing deadline applies, the Court now turns to whether this issue is appropriate for interlocutory appeal.  Defendant seeks the Court's leave to take an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) to challenge the Court's decision that Atkins filed a timely charge of discrimination with the EEOC.  Section 1292(b) allows a district judge to permit that an order, which is not otherwise appealable, to be appealable if: (1) there is substantial ground for difference of opinion; (2) the order involves a controlling question of law; and (3) an immediate appeal may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  The Sixth Circuit has determined that review under § 1292(b) should be used "sparingly" and be reserved for "extraordinary" cases.  *Kraus v. Bd. of Cty. Road Comm'r for Kent Cty.*, 364 F.2d 919, 922 (6th Cir. 1966).

The Court finds that defendant has not made the required showing to permit interlocutory appeal under § 1292(b).  First, defendant has not shown that there is substantial ground for differing opinions on the issue.  As previously discussed, courts have consistently applied a 300-day deadline for failure to accommodate claims filed in Tennessee.  Defendant has not cited any cases to suggest that there are differing opinions

---

[2] The Court notes that Atkins also argues that in the event that the 180-day filing deadline applies, it would be improper to dismiss any of her claims under the principle of equitable tolling.  Because the Court finds that the 300-day filing deadline applies, the Court need not address whether equitable tolling is applicable.

14

as to this issue.  Furthermore, the Court finds that both the plain meaning of the statute and the principles of interpretation from the Supreme Court support its finding.

In addition, the filing deadline issue is not a controlling issue of law, and an immediate appeal would not advance the ultimate termination of the litigation.  A legal issue is "controlling" when it could materially affect the outcome of the case "such as when reversal of the District Court's Order would terminate the action."  *Hurt v. Commerce Energy, Inc.*, 92 F. Supp. 3d 683, 701 (N.D. Ohio 2015) (citations omitted). In determining whether an appeal would materially advance the ultimate termination of the litigation, courts consider whether the appeal will "appreciably shorten the time, effort, and expense exhausted between the filing of a lawsuit and its termination." *Id.* at 702 (citation omitted).  "When litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) (alteration in original) (citation omitted).

The Court notes that plaintiffs have the following two claims pending: a claim for failure to provide reasonable accommodation and a claim for discriminatory discharge. While defendant argues that the claim for discriminatory discharge is based on defendant's alleged failure to accommodate, the Court never reached that conclusion in its July 7, 2016, Memorandum and Order.  Aside from their argument that defendant terminated Atkins as a result of defendant's failure to accommodate, plaintiffs also argue that defendant terminated Atkins for disability-related conduct.  Defendant does not argue

15

that a termination for disability-related conduct would be subject to a 180-day filing deadline. Defendant also did not ask the Court to reconsider reaching whether Atkins was terminated for disability-related conduct. Consequently, regardless of whether plaintiffs' failure to accommodate claim survives, their claim of discriminatory discharge will need to be resolved at trial. Because there is a significant amount of overlapping evidence between the failure to accommodate and the discriminatory discharge claims, disposing of the failure to accommodate claim would not shorten the time, effort, or expense needed to terminate the lawsuit and the litigation would be "conducted in substantially the same manner." *Id.*

In sum, the Court finds that defendant did not make the required showing to permit interlocutory appeal, and interlocutory appeal is not appropriate in this case.

### C. Katharine Kores's Declaration and Worksharing Agreement

Defendant also moves the Court to reconsider its July 7, 2016, Memorandum Opinion and Order, based on newly discovered evidence. In its July 7, 2016, Memorandum Opinion and Order, the Court declined to strike Katharine Kores's declaration and the worksharing agreement. Defendant asks the Court to reconsider that portion of its opinion.

The Court denied defendant's motion to strike Kores's declaration and the worksharing agreement in part because the information contained in it was analogous to a public record and equally available to both parties [Doc. 66 pp. 18–19]. In making this

determination, the Court found that any failure to disclose such information had a minimal impact on defendant [*Id.*].

Defendant now argues that the deposition of Kores reveals that the worksharing agreement between the EEOC and the THRC is not publically available in any meaningful sense. In particular, Kores admitted the worksharing agreement is not available to the public absent a specific request and that she is not aware of the availability of the agreement on the internet. Defendant contends this revelation demonstrates actual prejudice to defendant as a result of the EEOC's failure to disclose the worksharing agreement despite it being requested in discovery.

Defendant notes that it posed the following interrogatory to the EEOC: "If the EEOC contends this lawsuit was timely filed, please state the factual basis for same and identify any documents or things you contend support your contention" [Doc. 125-1 p. 3]. In response, the EEOC stated: "All documentation supporting the Commission's Complaint was submitted to Defendant on June 20, 2015 as part of the Commission's Initial Disclosures pursuant to Rule 26(a)(1). In accordance with Fed. R. Civ. P. 33(d), *see* Bates No. EEOC_000001-000378" [*Id.* at 3–4]. In so answering, Kores, on behalf of the EEOC, swore that the EEOC relied only on the 378 pages of documents to support its contention that this lawsuit is timely. The worksharing agreement was nowhere in those 378 pages. Defendant argues that the EEOC should be required to stand by their original contention that it would not use the worksharing agreement to support its argument that the lawsuit was timely filed.

In the Court's July 7, 2016, Memorandum Opinion and Order, the Court determined that, even if plaintiffs violated their discovery obligations under Federal Rules of Civil Procedure 26(a) or (e), the exclusion of the worksharing agreement was not warranted as it would effectively result in dismissal of their claims. In doing so, the Court noted that dismissal is a sanction of "last resort that may be imposed only if [a] court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." *Patton v. Aerojet Ordnance Co.*, 765 F.2d 604, 607 (6th Cir. 1985); *see also Signature Combs, Inc. v. United States*, 222 F.R.D. 343, 345 (W.D. Tenn. 2004) (applying this standard for dismissal when construing a motion to preclude as a request for dismissal). Furthermore, when contemplating dismissal, a court should also assess: (1) whether the opposing party was prejudiced by the discovery violation; (2) whether the potentially dismissed party was warned that a discovery violation could lead to dismissal; and (3) whether less drastic sanctions were imposed or considered before dismissal. *Fharmacy Records v. Nassar*, 379 F. App'x 522, 523–24 (6th Cir. 2010).

As of July 7, 2016, when the Court issued its Memorandum Opinion and Order, there was no evidence that plaintiffs acted with willfulness, bad faith, or fault. Defendant now argues that Kores's testimony reveals that "the EEOC's litigation strategy amounted to effectively 'sandbagging'" defendant about the worksharing agreement [Doc. 126 p. 4].

The EEOC points out, however, that it offered the worksharing agreement in response to defendant's motion for summary judgment because defendant identified, for

the first time, an unsigned statement from the THRC indicating that the THRC does not possess any records relating to Atkins's charge. Notably, plaintiffs did not attach the worksharing agreement to their own motion for summary judgment, which indicates that they were under the impression that it was unnecessary evidence to prove their claims were timely as a matter of law. Based on this information, the Court still finds no evidence of willfulness, bad faith, or fault. In addition, it remains the case that the plaintiffs were not warned that a failure to disclose the worksharing agreement could lead to dismissal and no lesser sanctions have been imposed by the Court.

The Court's final inquiry is whether Kores's deposition demonstrates that defendant was prejudiced by the late disclosure of the worksharing agreement. Even though Kores states that she is not aware whether the worksharing agreement between the EEOC and the THRC is available on the internet, the Court still finds that any prejudice to defendant was minimal. In November 2015, defendant referenced the worksharing agreement in answers to interrogatories, alleging as a basis for believing that plaintiffs' suit was time-barred that "Atkins did not file a charge with the [THRC], and the workshare agreement between the EEOC and the THRC does not save Atkins's claim" [Doc. 129-7 p. 2]. As such, defendant was aware of the worksharing agreement and could have specifically requested it. In addition, Atkins's EEOC charge states on its face that it is filed contemporaneously with both the EEOC and the THRC [Doc. 129-8 p. 1]. Defendant, therefore, was on notice of a contemporaneous filing from early on in this litigation.

19

Furthermore, the Sixth Circuit has specifically discussed the existence of a worksharing agreement between the EEOC and THRC, noting that, pursuant to the agreement, the THRC "acted as agent for the EEOC, and vice versa," and that a charge filed with one agency was simultaneously filed with both. *Brown v. Crowe*, 963 F.2d 895, 898 (6th Cir. 1992); *see also Tate v. Shelby Cty. Road Dep't*, 19 F.3d 1434 (6th Cir. 1994).[3]

Defendant was therefore aware of, or at the very least should have been on notice of, the worksharing agreement. As such, defendant could have requested the document and the Court finds that any prejudice to the defendant as a result of the late disclosure was minimal.

In sum, the Court still finds no reason to reconsider its decision to deny defendant's motion to strike Kores's declaration and the worksharing agreement. As such, defendant's motion to reconsider on this basis will be denied.

## IV. Atkins's Motion for Reconsideration

Atkins also filed a motion for reconsideration of the Court's July 7, 2016, Memorandum Opinion and Order. In its July 7, 2016, Memorandum Opinion and Order, while analyzing plaintiffs' failure to accommodate claim, the Court found that defendant

---

[3] Defendant argues that these opinions could not put it on notice of the agreement because they were issued nine and seven years, respectively, before the operative 2011–2012 worksharing agreement. Plaintiffs, however, point out that counsel for defendant has recently litigated in other discrimination lawsuits on the issue of timeliness of an EEOC charge in Tennessee. *See Arnold v. Fed.-Mogul Prods., Inc.*, No. 2:11-126, 2013 WL 652524, at *1–3 (M.D. Tenn. Feb. 21, 2013). Also, notably, defendant does not deny or explain the fact that it acknowledged the existence of the workshare agreement in November 2015, when responding to interrogatories.

20

failed to engage in the interactive process [Doc. 66 pp. 35–36].  The Court, however, ultimately denied plaintiffs' motion for summary judgment as to the failure to accommodate claim because the Court found a material question of fact as to whether Atkins was actually deprived of a needed accommodation [*Id.* at 38].  Atkins argues that the Court should reconsider this portion of its Memorandum Opinion and Order because defendant's failure to engage in the interactive process automatically constitutes a failure to accommodate where plaintiff can prove that a reasonable accommodation would have been possible.  Atkins's basis for the Court's reconsideration appears to be that the Court was in clear error in making its determination.

The fifth element necessary for a plaintiff to succeed on a failure to accommodate claim is that "the employer failed to provide the *necessary* accommodation."  *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011) (emphasis added) (citation omitted).  Consequently, and as the Court noted in its Memorandum Opinion and Order, there is no claim for a failure to accommodate if Atkins did not actually need to be accommodated, that is, if she already had viable options available to her [Doc. 66 p. 35–36].  The Court discussed the various places defendant argued Atkins could have kept her orange juice, and whether those were viable options [*Id.* at 36–38].

In her motion for reconsideration, Atkins argues that because defendant failed to engage in the interactive process, she did not know that she had other options available to her.  She points out that it was not her responsibility to unilaterally explore all possible

accommodations to determine which were viable for her. Consequently, she asserts that defendant failed to accommodate her as a matter of law.

The record establishes, however, that among other things Atkins occasionally stored groceries in the front cooler [Doc. 31-4 pp. 18–23]. As such, there is a question of fact as to whether plaintiff needed any accommodation because there is evidence that she could have kept her orange juice in the front cooler. While Atkins is correct that she did not need to unilaterally explore all options, because Atkins already stored groceries in the front cooler, the record shows that Atkins already knew about this option.[4] If storing her orange juice in the front cooler was a viable option that Atkins knew about, she did not need any accommodation and thus would not have a viable claim for failure to provide a reasonable accommodation.

The Court notes that Atkins has not cited any precedent standing for the proposition that an employee may have a valid claim for failure to provide a reasonable accommodation where the employee did not actually need an accommodation. Because the Court found a question of fact as to whether Atkins needed any accommodation, the Court finds no clear error in its denial of plaintiffs' motion for summary judgment as to the failure to provide a reasonable accommodation claim.

---

[4] As the Court pointed out in its Memorandum Opinion and Order, there is evidence that storing groceries in the store cooler was against store policy [Doc. 66 p. 38]. As such, the Court recognizes that storing orange juice in this cooler was not, necessarily, a valid option for Atkins. However, the Court finds a material question of fact as to whether it was a valid option, and consequently, as to whether Atkins was deprived of a needed accommodation.

22

### III. Conclusion

For the reasons discussed herein, the Court **DENIES** Defendant's Motion for Reconsideration of the Court's Order Denying Defendant's Motion for Summary Judgment as to Timeliness of Plaintiffs' Claims or, Alternatively, Certification of Interlocutory Appeal [Doc. 96], **DENIES** Intervening Plaintiff's Motion for Reconsideration of Court's Order Denying Plaintiffs' Motion for Partial Summary Judgment [Doc. 99], and **DENIES** Defendant's Motion for Reconsideration Based Upon Newly Discovered Evidence [Doc. 125].

IT IS SO ORDERED.

s/ Thomas A. Varlan_____
CHIEF UNITED STATES DISTRICT JUDGE