UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMISSION, and LINDA ATKINS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:14-CV-441-TAV-HBG ) |
| DOLGENCORP, LLC d/b/a DOLLAR GENERAL CORP., | ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral Order [Doc. 203] of the Chief District Judge.

Now before the Court is Plaintiff Linda Atkins's Motion for Award of Attorney[']s Fees and Costs [Doc. 163]. The Defendant has responded in opposition to the Motion [Doc. 193], and the Plaintiff has replied [Doc. 201]. Subsequently, the Plaintiff filed a Supplemental Motion [Doc. 202], requesting additional attorney's fees. The Defendant filed a Sur-Reply [Doc. 206] to Plaintiff's original Motion, and the Plaintiff objected [Doc. 208]. The Plaintiff also filed a Second Supplemental Motion [Doc. 211] requesting additional attorney's fees, and the Defendant responded [Doc. 213] to the Second Supplemental Motion. This Motion has been thoroughly briefed, and the Court has considered all of the above filings.

The parties appeared before the Court for a motion hearing on July 11, 2017. Attorneys Jennifer Morton and Maha Ayesh appeared on behalf of the Plaintiff.[1] Attorney Markeisha Savage

---

[1] The Court acknowledges that there are two Plaintiffs in this case, the EEOC and Linda Atkins. However, the present motion was filed by Plaintiff Atkins, so all references to the Plaintiff are to Plaintiff Atkins, unless otherwise noted.

appeared on behalf of the Equal Employment Opportunity Commission ("EEOC"). Attorney Stanley Graham appeared on behalf of the Defendant. Accordingly, for the reasons more fully explained below, the Court **RECOMMENDS** that the Plaintiff's Motions [**Docs. 163, 202, 211**] be **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court **RECOMMENDS** that the Plaintiff be awarded a total amount of $445,322.25 in attorney's fees and $1,676.95 in litigation expenses.

## I.    BACKGROUND

The Complaint in this case was filed on September 23, 2014, [Doc. 1] by the EEOC. On November 24, 2014, the Plaintiff filed a Motion to Intervene, to which the Defendant objected [Doc. 9]. The undersigned granted [Doc. 11] the Plaintiff's Motion to Intervene, and the Plaintiff filed her Intervenor Complaint [Doc. 12] on December 18, 2014.

The Intervenor Complaint alleged that the Plaintiff had been diagnosed with insulin-dependent Type II diabetes. [*Id.* at ¶ 8]. The Intervenor Complaint stated that in August 2009, the Plaintiff began working for the Defendant as a sales associate, and later, in February 2010, she was promoted to Lead Sales Associate. [*Id.* at ¶ 10]. The Intervenor Complaint averred that early in her employment with the Defendant, the Plaintiff had informed her supervising store manager of her diabetes diagnosis. [*Id.* at ¶ 13]. Due to her disability, the Plaintiff alleged that she suffered from hypoglycemic episodes caused by having abnormally low blood-sugar levels and that based on medical advice, she routinely kept orange juice with her in the event she experienced symptoms of a hypoglycemic attack. [*Id.* at ¶¶ 13-14].

The Intervenor Complaint continued that in Fall 2011, the Plaintiff felt the beginning of a hypoglycemic episode at work and that she was the only employee in the store at the time. [*Id.* at ¶ 15]. At that time, she did not have anything to eat or drink, so in order to avoid leaving the store

unattended, she took a bottle of orange juice from the nearest store cooler and drank some orange juice. [*Id.* at ¶ 16]. The Intervenor Complaint alleged that as soon as her condition stabilized, she promptly paid for the orange juice. [*Id.*]. She later informed her supervisor about the incident and requested that she be permitted to keep orange juice at her cash register. [*Id.* at ¶ 17]. The Intervenor Complaint alleged that her supervisor denied this request, stating that company policy prohibited employees from having food or drink at the cash register. [*Id.*]. The Plaintiff made multiple requests to keep orange juice with her at the cash register, but these requests were denied. [*Id.* at ¶ 18].

The Intervenor Complaint continued that in January 2012, the Plaintiff experienced another hypoglycemic episode, so she took a bottle of orange juice from the nearest cooler and drank some orange juice. [*Id.* at ¶ 20]. Two months later, during a meeting with her managers, the Plaintiff acknowledged that she had twice consumed orange juice without first paying for it due to medical necessity. [*Id.* at ¶ 21]. The supervisor informed her that she had violated company policies, both by "grazing" and by ringing up her own sales. [*Id.* at ¶ 22]. At the meeting, the Plaintiff requested that she be permitted to keep her personal orange juice at the cash register to prevent similar circumstances from happening, and she was directed to contact Human Resources. [*Id.* at ¶ 23]. After she prepared her statement to Human Resources, the Plaintiff was terminated. [*Id.* at ¶ 24]. The Intervenor Complaint alleged that the Plaintiff contacted the Dispute Resolution Department, but representatives explained that they could not help because the Plaintiff violated company policy and did not previously request a reasonable accommodation. [*Id.* at ¶¶ 26-27]. The Intervenor Complaint alleged failure to accommodate, discriminatory discharge, and retaliation all in violation of the Americans with Disability Act ("ADA").

After a significant dispositive motion practice filed by all parties [Docs. 24, 28, 31],[2] the Court granted the Defendant summary judgment as to the Plaintiff's retaliation claim but denied the parties' motions with respect to the reasonable accommodation claim and the discriminatory discharge claim. [Doc. 66]. Further, the parties litigated a number of motions in limine, along with Plaintiff's motion to reconsider and the Defendant's two motions to reconsider the Order denying summary judgment. The District Judge denied [Doc. 139] all the motions to reconsider.

The parties proceeded to trial on September 12, 2016. The trial continued until September 16, 2016, when the jury returned the verdict. The jury determined that the Defendant discriminated against the Plaintiff because of her disability by failing to provide her with a reasonable accommodation in violation of the ADA. [Doc. 148]. Further, the jury determined that the Defendant discriminated against the Plaintiff by terminating her because of her disability, also in violation of the ADA. [*Id.*]. The jury awarded the Plaintiff $27,565.44 in back pay and compensatory damages in the amount of $250,000.00. [*Id.*]. Finally, the jury did not find that the Defendant acted with malice or reckless indifference to the Plaintiff's federally protected rights under the ADA. [*Id.*]. The Court entered Judgment [Doc. 149] in favor of the Plaintiff on September 23, 2016.

---

[2] The District Judge denied [Doc. 66 at 20], as moot the EEOC's Motion [Doc. 24] in light of the parties' agreement that the filing of an Amended Answer would moot the issues raised therein.

## II.    POSITIONS OF THE PARTIES

The Plaintiff requests [Doc. 211] attorney's fees in the total amount of $528,425.00 and costs in the amount of $3,276.95.  With respect to hourly rates, the Plaintiff requests $400.00 per hour for Attorney Morton, $300.00 per hour for Attorney Ayesh, and $150.00 per hour for Cheryl Mahaffy, who is a legal assistant.  The total number of hours billed in this case is 1,516.6.  *See* [*Id.*].

In support of the Motion, the Plaintiff states that the hourly rates are reasonable, and she submits Declarations from several attorneys in support of the rates.  In addition, the Plaintiff submits a Declaration from Dr. Charles Baum, an economist.  The Plaintiff cites a number of cases, arguing that the rates charged in this matter are reasonable.  The Plaintiff states that she does not seek an enhancement or adjustment of her lodestar amount and that the hourly rates and hours of service are reasonable.  The Plaintiff highlights the award obtained in this case and asserts that the results are particularly impressive given the Defendant's failure to consider early settlement or make any kind of reasonable settlement offer.  The Plaintiff asserts that the time and labor required were considerable given the Defendant's defenses, which were substantive and procedural.  Further, the Plaintiff avers that the Defendant's defenses included novel procedural issues of law and matters of first impression within this Circuit, and perhaps the nation.  In addition, the Plaintiff contends that her attorneys could not perform work for other clients or accept new clients due to preparing and trying the instant case.  The Plaintiff avers that the fees are within the range customarily charged by attorneys with similar skill and experience.  The Plaintiff asserts that her attorneys are experienced and respected in their fields and that this case was not desirable given the limited economic damages.   The Plaintiff states that her attorneys have represented her since 2012 and that the awards in other cases support the requested amount.

The Defendant objects [Doc. 193], arguing that this case is a routine ADA case and that it was co-prosecuted by a total of seven attorneys for the Plaintiffs. The Defendant asserts that the hourly rates should be as follows: $250.00 for Attorney Morton, $175.00 for Attorney Ayesh, and $75.00 per hour for Ms. Mahaffy. The Defendant contends that the Declarations from the other attorneys do not support a departure from the judicially-recognized rates for Knoxville. In addition, the Defendant asserts that Dr. Baum's economic report is irrelevant because the only figure that matters is the prevailing market rate sufficient to encourage competent representation, which is the Court's decision.

Further, the Defendant argues that 88.65 hours should be excluded for excessive pre-litigation work, clerical work, travel, and the Plaintiff's unsuccessful retaliation claim. The Defendant also states that the Court should apply an additional percentage reduction of 50% to the remaining lodestar total to account for the EEOC's substantial contribution as co-prosecutor in this matter. The Defendant states that redundant work and excessive billing also support a percentage reduction.

The Plaintiff filed a Reply [Doc. 201] asserting that the Defendant has not countered her evidence of the prevailing market rate for her attorney's fees. In addition, the Plaintiff asserts that her attorneys should be compensated for all hours billed. The Plaintiff explains that the time billed for pre-litigation is compensable. Further, she asserts that all travel time is compensable and that the Court is not required to deduct fees based on the unsuccessful retaliation claim. She contends that the only clerical tasks performed were incidental to legal work and not unreasonably billed by counsel. The Plaintiff states that an across-the-board reduction of fees is not appropriate in this case because the lodestar amount is the presumptively reasonable award and the Defendant has not shown a reason for the Court to take such an extreme measure. The Plaintiff states that her

attorneys contributed to the success of the case and that their work was not unnecessarily duplicative of the EEOC's work. Further, the Plaintiff submits that a fee reduction is not warranted based on Defendant's blanket allegations of redundancy and excessive billing. Finally, the Plaintiff asserts that the time spent preparing the attorney's fees petition and costs is reasonable.

As mentioned above, the Plaintiff filed another Motion [Doc. 202] requesting additional attorney's fees for services performed from October 24, 2016, through June 13, 2017.

Subsequently, the Defendant filed a Sur-Reply [Doc. 206] arguing that the Plaintiff cited cases that are inapplicable to this single-claimant employment case and do not supplant the Court's repeated holding that $250.00 per hour is the prevailing rate for Plaintiff's employment counsel in Knoxville. The Defendant asserts that the Declarations do not support the hourly rates requested in this case and that a survey of fee awards of the last twelve (12) years in the Eastern District of Tennessee reveals the average total fee award in comparable cases is $99,937.00. In Support of its Sur-Reply, the Defendant attached a Fee Chart purportedly showing attorney's fees awarded for single-plaintiff employment cases following a jury or bench trial.

The Plaintiff filed an Objection [Doc. 208] to the Defendant's Sur-Reply. The Plaintiff objects to the Fee Chart and requests that the Court disregard Defendant's arguments. The Plaintiff also objects to the Defendant's submission of the sur-reply. The Plaintiff asserts that there are missing cases from the Defendant's Fee Chart. The Plaintiff states that the reasonableness of hours spent litigating and the hourly rates are considered on a case-by-case basis.

After the hearing, the Plaintiff filed a Second Supplemental Motion [Doc. 211], which includes a request for attorney's fees for work performed from June 14, 2017, through July 11, 2017. The Plaintiff requests an additional 50.05 hours for such work. The Defendant objects

[Doc. 213], arguing that the time billed for a nine page sur-sur reply and preparation for a hearing is excessive and substantially duplicative.

## III.    ANALYSIS

As an initial matter, the Court notes that the parties do not dispute that as the prevailing party, the Plaintiff is entitled to attorney's fees.  Thus, the only determination for this Court is whether the requested amount of attorney's fees is reasonable.  In making this determination, courts often employ the "lodestar method," which is "the proven number of hours reasonably expended on the case by the attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). The reasonableness of the hours and the rate is determined by considering twelve factors:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Id.* at 415-16. The most critical factor in determining the reasonableness of a fee award is the degree of success obtained.  *Id.* at 416 (quoting *Farrar v. Hobby,* 506 U.S. 103, 114 (1992)).

With the above analysis in mind, the Court will now turn to the Defendant's objections. As mentioned above, the Defendant objects to the hourly rates and the time expended in this case. In addition, the Defendant objects to the cost of Dr. Baum's expert report.

A.     Hourly Rates

The Defendant requests that Attorney Morton's hourly rate of $400.00 be reduced to $250.00, Attorney Ayesh's hourly rate be reduced to $175.00, and that Ms. Mahaffy's hourly rate be reduced to $75.00.

In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community, which for fee purposes, is the legal community within the court's territorial jurisdiction or venue. *Brooks v. Invista*, No. 1:05-cv-328, 2008 WL 304893, at *3 (E.D. Tenn. Jan. 30, 2008) (citing *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). The appropriate or reasonable hourly rate "may not, however, exceed the amount necessary to cause competent legal counsel to perform the work required." *Id.* (citing *Coulter v. Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986), *abrogated on other grounds by*, *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016)).

The Court of Appeals has explained this distinction well:

> The statutes use the words "reasonable" fees, not "liberal" fees. Such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region. Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate.

*Coulter*, 805 F.2d at 149; *see also Lamar Adver. Co. v. Charter Township of Van Buren*, 178 F. App'x 498 (6th Cir. 2006) ("Even if it would be reasonable to award [plaintiff] $370 per hour, the record supports the district court's conclusion that $200 per hour is sufficient to encourage competent lawyers in the relevant community to undertake legal representation.").

The Court will address the hourly rates separately.

### 1. Attorney Morton

The Court has considered the parties' arguments with respect to Attorney Morton's rate and recommends that her hourly rate be reduced to $350.00. Relying on a prior award to Attorney Morton, the Defendant argues that $250.00 is the more appropriate billing rate. The Court disagrees. In *Davis v. Northpoint Senior Services, LLC*, No. 3:14-cv-106, 2015 WL 8752068 (E.D. Tenn. Dec. 14, 2015), the Court awarded Attorney Morton $250.00 per hour. The undersigned determined that $250.00 per hour was a "reasonable hourly rate for this work, given Ms. Morton's skill and experience in these types of cases." *Id.* at *4. The Court, however, did not take any testimony relating to Attorney Morton's hourly rate at that time and the matter was over a discovery dispute. *Id.* The Court acknowledges that it has cited *Davis* as an example in other cases, but the Court has also increased hourly rates depending on the circumstances of the case. *See Jones v. Babcock & Wilcox Tech. Servs. Y-12, LLC*, No. 311-CV00531-PLR-HBG, 2016 WL 4691294, at *1 (E.D. Tenn. Aug. 8, 2016), *report and recommendation adopted by*, 2016 WL 4690398 (E.D. Tenn. Sept. 7, 2016) (awarding $345.00 per hour).

The Defendant asserts that the *Jones* decision is an outlier and that the attorneys litigating *Jones* have much more experience than Attorney Morton. The Defendant's argument, however, undermines the success achieved in this case. Moreover, while the Defendant refers to this case as a "routine" ADA case, such allegation is contradicted by the procedural arguments raised in the Defendant's dispositive motions in this case.

The circumstances in this case, coupled with Attorney Morton's experience and skill in this field, warrant $350.00 per hour. Specifically, the Plaintiff was awarded back pay and compensatory damages in the amount of $250,000.00, which was close to the amount the Plaintiff requested. Further, the Court notes that Attorney Morton has had twenty-four years of litigation

experience in state and federal courts, and she is a member of numerous professional organizations. This rate is also supported by the Declarations that were submitted by the Plaintiff. *See* [Doc. 166-13] (Declaration of Wade Davis, stating that $350-$400 is within a reasonable range of hourly rates in the Knoxville, Tennessee market for attorney with 20-25 years of experience); [Doc. 166-16] (Declaration of Katherine Young, who has been practicing for twenty-two years, stating that her currently hour rate for contingency cases is $350 per hour); [Doc. 166-17] (Declaration of Richard Matlock, who graduated law school in 1992, stating that he intends to charge $315.00 per hour in 2017); and [Doc. 188-18] (Declaration of David Burkhalter, III, stating that Ron Rayson, who has been practicing employment law since 1988, charges $375.00 per hour).[3]  Finally, the Court acknowledges that Attorney Morton served as lead counsel on this matter.  Accordingly, the Court recommends that the Plaintiff be awarded $350.00 per hour for Attorney Morton's work.

The Court does not recommend awarding the Plaintiff's requested $400.00 per hour for Attorney Morton.  In making this recommendation, the Court has considered all the filings and the previous awards for attorney's fees. *See Jones,* 2016 WL 4691294, at *4.  Further, the Court finds $350.00 per hour is sufficient to attract competent counsel and is supported by the declarations, noted above, submitted by the Plaintiff. *See Adcock-Ladd*, 227 F.3d at 350 (noting that the prevailing market rate is the rate that "lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record").  The Court acknowledges that the Declarations also opine that $400.00 per hour is a reasonable rate for Attorney Morton in this case, but there are attorneys who have similar backgrounds as Attorney Morton who do not charge $400.00 per hour.  The Plaintiff submits the Declaration of Donna Mikel, a Chattanooga attorney,

---

[3] The Court notes that David Burkhalter's Declaration was filed in support of the motion for attorney's fees in *Jones,* 2016 WL 4691294.

who states that she was recently awarded $400.00 per hour in a case. The Declaration, however, omits that her $400.00 hourly rate was not contested and was submitted as part of a settlement agreement in a class action. *See Tami Long v. Covenant Transp. Inc.,* No. 1:15-cv-00278 [Docs. 40, 56]. In addition, the Court notes that in the present case, Attorney Morton's retainer agreement in 2014 quoted $350.00 per hour. [Doc. 166-9].[4] *See also Van Horn v. Nationwide Pro. & Cas. Ins.*, 436 F. App'x 496, 499 (6th Cir. 2011) (noting that a district court may look to "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests"). The Plaintiff also submits that defense counsel's hourly rates for senior attorneys, associates, and legal assistances are much higher but, as noted above, the relevant legal community constitutes the legal community within the Court's territorial jurisdiction. *See Adcock-Ladd*, 227 F.3d at 350.

Finally, the Court has reviewed Dr. Baum's expert report and finds that his report yields unrealistic results. For example, he estimates that Attorney Morton should be able to reasonably charge $512.28 per hour. As recently explained by the Sixth Circuit, "[T]he appropriate rate is not necessarily the exact rate of a particular firm, but the market rate in the venue sufficient to encourage competent lawyers in the relevant community to undertake legal representation." *The Ne. Ohio Coal. for the Homeless v. Husted,* 831 F.3d 686, 715–16 (6th Cir. 2016) (citing *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007)). Further, Dr. Baum's report cites previous attorney's fee awards and adjusts such awards for inflation. However, the Court must consider other relevant factors, such as the circumstances of the case, the skill and experience of each attorney, and the rate within the community. *See also Van Horn*, 436 F. App'x at 499 (explaining that "while the district court may take into consideration an attorney's skill level

___

[4] The Court also acknowledges that the retainer agreement is dated 2014 and states that the hourly rate may increase; however, Attorney Morton began billing in 2012.

in identifying the market rate, this Circuit holds that 'reasonable' fees need not be 'liberal' fees, and that '[s]uch fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region'") (quoting *Coulter*, 805 F.2d at 149). Accordingly, the Court recommends that Attorney Morton be awarded $350.00 per hour.

### 2. Attorney Ayesh

The Defendant requests that Attorney Ayesh's rate of $300.00 per hour be reduced to $175.00 per hour. Although the Court finds a reduction is warranted, the Court finds the Defendant's request unreasonable. In support of the Defendant's request, it cites the undersigned's Report and Recommendation in *Trentham v. Hidden Mt. Resorts, Inc.*, No. 3:08-cv-23 [Doc. 154].[5] The Defendant states that in *Trentham*, the Court determined that rates of $190.00 per hour for a senior associate with nine years' experience and $125.00 per hour for a junior associate were reasonable for legal work performed in an employment discrimination case in this area. [Doc. 193 at 11]. The Court notes that in *Trentham*, however, these were the rates that plaintiff's counsel specifically requested and billed. Moreover, the associates in the *Trentham* case did not contribute many hours working on the case (*i.e.,* the associates billed 61 hours out of 578.4 total hours). Here, Attorney Ayesh made a substantial contribution to this case as detailed in her billing entries.

The Court will recommend that Attorney Ayesh's hourly rate be reduced to $250.00. *See* [Doc. 166-13] (Declaration of Wade Davies, stating that a billable hourly rate of $250-$350 is within a reasonable range in the Knoxville, Tennessee market for attorneys with approximately 10 years of experience who are accomplished in their primary area of practice); [Doc. 166-15] (Declaration of Melissa Carrasco, stating that she has practiced law since 2010 and charges $275.00 per hour for contingency cases). In recommending such rate, the Court has reviewed

---

[5] The parties settled the case before the District Judge ruled on the Report and Recommendation.

Attorney Ayesh's Declaration. [Doc. 166-3]. Attorney Ayesh graduated law school in 2006 and clerked for Judge Tipton at the Tennessee Court of Criminal Appeals for two years. [*Id.* at ¶ 6]. From 2008 to 2011, she worked for Attorney Morton. [*Id.*]. She left Attorney Morton's firm to work on trafficking and migrant labor issues but returned in 2013. [*Id.*]. The Court recommends $250.00 based on Attorney Ayesh's experience, along with the other factors discussed below.

For instance, the Court notes that this rate is also consistent with the 2014 retainer agreement. [Doc. 166-9]. Moreover, the Court finds this rate reflects the value that Attorney Ayesh brought to this case, such as drafting several of the motions that were filed. In addition, while she provided substantial value to this case, this rate reflects that she was not lead counsel. *See* [Doc. 201 at 2] (Declaration of Maha Ayesh) ("Although Ms. Morton has acted as lead counsel on behalf of Ms. Atkins, I have taken an active role in the case from the beginning of the federal court litigation as well."). Accordingly, the undersigned recommends $250.00 per hour for Attorney Ayesh.

### 3. Cheryl Mahaffy

The Defendant requests that Cheryl Mahaffy's hourly rate be reduced from $150.00 to $75.00 per hour. While the Court has previously awarded similar awards to legal assistants, the Court has also increased this award recently. *See Flack v. Knox Cnty., Tennessee*, No. 3:15-CV-522-PLR-HBG, 2017 WL 627460, at *5 (E.D. Tenn. Jan. 24, 2017), *report and recommendation adopted by*, No. 3:15-CV-00522, 2017 WL 627436 (E.D. Tenn. Feb. 14, 2017). In *Flack*, the court acknowledged the paralegal's law degree and the work performed in the case. *Id.* While Ms. Mahaffy does not have a law degree, she has thirty years of experience in employment litigation and assisting attorneys representing employees. *See* [Doc. 166-5]. The Court finds value in such experience and recommends the rate of $95.00 per hour for Ms. Mahaffy.

The Court acknowledges that Ms. Mahaffy was awarded $125.00 per hour in an arbitration case. *See* [Doc. 166-10]. However, it is not clear, based on the documents that were filed, whether this hourly rate was in dispute. In any event, the Court finds $95.00 an appropriate rate for the Knoxville area. Accordingly, the Court recommends that Ms. Mahaffy's hourly rate be $95.00.

### B.    Hours Expended

The Defendant asserts that the overall hours requested are excessive and must be reduced. First, the Defendant argues that the time spent on extensive pre-litigation activities should be reduced. Next, the Defendant states that travel time should be reduced by 50%. Third, the Defendant contends that the time spent on Plaintiff's unsuccessful retaliation claim is not recoverable. Fourth, the Defendant objects to any time spent on clerical work. In addition, the Defendant argues that the lodestar amount should be lowered as a whole for duplicative work with the EEOC and for overbilling. Finally, the Defendant states that the Plaintiff's request for "fees for fees" is excessive and unwarranted.

The Court will address each of these arguments.

### 1.    Pre-litigation Activities

The Defendant asserts that the time spent on pre-litigation activities should be reduced. Specifically, the Defendant states that the Plaintiff is requesting 123 hours for work performed prior to drafting the Motion to Intervene in this case. The Plaintiff replies that between 2012 and 2014, she was engaged in the mandatory EEOC administrative process. The Plaintiff states that it is beyond dispute that attorney's fees may be awarded to a prevailing plaintiff for work done in required administrative proceedings before filing a lawsuit.

Pursuant to 42 U.S.C. § 12205, "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, . . .

a reasonable attorney's fee . . ."  The Supreme Court has explained that a court may award attorney's fees for time "spent on administrative proceedings to enforce the civil rights claim prior to the litigation."  *North Carolina Dept. of Transp. v. Crest Street Community Council, Inc.*, 479 U.S. 6, 15 (1986).  Mandatory administrative proceedings fall within this category.  *See New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 71 (1980) (concluding that a Title VII prevailing party is entitled to recover attorneys' fees incurred from administrative proceedings because such proceedings are mandated by Title VII).

The Court has considered the parties' arguments and finds the Defendant's argument not well-taken.  The Defendant cites to *Webb v. Board of Educ. of Dyer Cty., Tenn.,* 471 U.S. 234 (1985) in support of its argument.  The Court finds, however, that Webb does not require a reduction in attorney's fees.  The Supreme Court in *Webb* stated that the plaintiff was not entitled to attorney's fees for work in conjunction with optional administrative proceedings.  *Id.* at 241. The Court explicitly distinguished its holding in *Carey* on the basis that *Carey* "arose under a statute that expressly require[d] the claimant to pursue available state remedies before commencing proceedings in a federal forum."  *Id.* at 240.

 The Defendant asserts that attorneys have an obligation to conduct a reasonable investigation prior to filing suit but that the Plaintiff was joining a lawsuit already in progress.  As the Plaintiff emphasizes, however, she is required to exhaust the EEOC process before filing suit and such tasks include counsel pursuing the EEOC charge, communicating and consulting with the EEOC, assessing the strength of the case, developing legal theories, calculating damages, and attempting early settlement.  The Court has reviewed the itemized statements [Docs. 166-2, 166-4] submitted with the Plaintiff's Motion and finds such tasks are reflected in these statements. Accordingly, the Court will not recommend any reductions for pre-litigation activities.

## 2. Travel Time

The Defendant asserts that per this Court's past practice, travel time should be reduced by 50%. The Defendant states that counsel frequently included travel time in a blocked billing entry, making it difficult to discern travel time from actual worked performed. The Defendant lists ten entries that reflect travel time. [Doc. 193 at 14]. The Defendant also emphasizes the largest traveling expense—traveling to Nashville for mediation. Attorney Morton and Attorney Ayesh each billed six hours of travel time for the mediation. The Defendant requests that the Court reduce the six hours by three hours for both Attorney Morton and Attorney Ayesh.

The Plaintiff states that the Court has previously allowed full recovery for traveling and that in this case the only significant travel time involved travel to and from Nashville to attend mediation in August 2016. The Plaintiff continues that such travel resulted in a total of six hours for both Attorney Morton and Attorney Ayesh or twelve hours total. The Plaintiff states that counsel's travel time was minimal and that they did not attend any depositions outside of Knoxville, instead deferring to the EEOC to handle those proceedings. Further, the Plaintiff states that her attorneys made use of the travel time to discuss strategy and preparation. Finally, the Plaintiff asserts that all the other travel entries cited by the Defendant are insignificant trips in and around Knoxville and that travel time in this case was not so excessive as to warrant any reduction.

The Court has considered the parties' arguments and will not recommend that travel time (with the exception noted below) be reduced.[6] The Court agrees with the Plaintiff in that the traveling entries that the Defendant has objected to are insignificant trips that are not so excessive as to warrant reductions. The Defendant cites to *Grant v. Shaw Environmental, Inc.*, No. 3:08-cv-350, 2013 WL 1305599 (E.D. Tenn. Jan. 30, 2013), *report and recommendation adopted by,* 2013

---

[6] *See infra,* "Clerical Work."

WL 1305596 (E.D. Tenn. Mar. 28, 2013). In *Grant*, however, the Court noted that 10% of the original time billed was for traveling and counsel was not located in Knoxville. *Id.* at *8. In this case, Attorney Ayesh and Attorney Morton are local counsel, and the only significant traveling time was to attend mediation. Furthermore, the mediation was conducted a few weeks before trial, and Attorney Ayesh states in her Declaration, "Ms. Morton and I used the drive time in Nashville to prepare for the mediation, including working together to prepare an opening statement. After mediation failed, and with trial imminent within weeks, Ms. Morton and I used much of the drive time returning to Knoxville to discuss trial preparation, trial strategy, working efficiently with the EEOC, and division of work." [Doc. 201-1]; *see also Jones,* 2016 WL 4691294, at *5 ("With respect to the trip from Nashville to Knoxville to attend trial, the Court will not deduct any time since counsel explained at the hearing that they discussed and prepared for the trial during the entire trip"). Accordingly, the Court will not recommend that travel time be reduced.

### 3. Unsuccessful Retaliation Claim

The Defendant asserts that the time spent on the Plaintiff's unsuccessful retaliation claim is not recoverable. The Defendant states that the EEOC did not assert retaliation in its Complaint and that the Plaintiff's retaliation claim was dismissed because she failed to administratively exhaust her claim. The Defendant argues that the hours attributed to drafting any pleadings or arguments attributable to this unsuccessful claim are not recoverable. Specifically, the Defendant objects to 16.8 hours spent on the retaliation claim (7.4 hours from Attorney Morton's time, and 8.4 hours from Attorney Ayesh's time). *See* [Doc. 193 at 15-16].

The Plaintiff replies that the Court is not required to deduct fees based on the unsuccessful retaliation claim. The Plaintiff continues that the retaliation claim arose from the same common

core of facts and was based on a legal theory related to her successful disability discrimination and failure to accommodate claims.

The Sixth Circuit recently provided guidance on whether courts may award attorney's fees on unsuccessful claims. Specifically, the Sixth Circuit stated, "A civil-rights plaintiff need not succeed on every claim to recover attorney's fees; success on a single claim is sufficient to become a prevailing party." *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014) (citing *McQueary v. Conway,* 614 F.3d 591, 603 (6th Cir. 2010)). The Court further explained that when the unmeritorious claims are based on different facts and legal theories than the meritorious claims, the court must treat them separately and not award fees for the unmeritorious claims. *Id.* (quotations omitted). The Court continued:

> In contrast, if a plaintiff's unmeritorious and meritorious claims arise out of a common core of facts, and involve related legal theories, a court should not exempt from its fee award the hours spent on the claims that did not succeed. To determine if two claims are related, a court considers whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from that which gave rise to the plaintiff's successful claim.

*Id.* The Court reasoned, "An attorney who achieves 'excellent results' is entitled to a full fee, regardless of whether he or she succeeds on every related claim raised." *Id.* (citing *Waldo v. Consumers Energy, Co.,* 726 F.3d 802, 822 (6th Cir. 2013)).

The Court has reviewed the Defendant's objections and will not recommend that the hours expended litigating the retaliation claim be reduced. The Plaintiff's retaliation claim arose from the same common core of facts and was related to her disability discrimination and failure to accommodate claims. As the Plaintiff emphasizes, the theory of her retaliation claim was that the Defendant terminated her because she requested an accommodation for her disability. Her failure to accommodate claim was based on the Defendant's failure to engage in the interactive process

to identify a reasonable accommodation and the Defendant's failure to provide any accommodation. The discriminatory discharge claim was based on the Defendant's termination of the Plaintiff due to her disability. These claims all involve the same facts. Accordingly, the Court will not recommend any reductions for the limited time spent on the retaliation claim.

### 4. Clerical Work

The Defendant asserts that fees for clerical tasks such as photocopying and preparing notices and summons should be deducted by the Court. The Defendant asserts, however, that complicating such review is that Plaintiff's counsel frequently used block billing. The Defendant states that a total 3.85 hours should be deducted from Attorney Morton's time and a total of 2 hours should be deduced from Attorney Ayesh's time.

The Plaintiff asserts that any clerical work charged was incidental to legal work and not unreasonably billed by counsel. Further, citing to *Isabel*, 404 F.3d at 416, the Plaintiff states that the Sixth Circuit has rejected the argument that an attorney's requested fees should be reduced if the attorney worked on tasks that could have been performed by lower-paying staff, since such an argument assumes that lower paying staff was available.

District courts within the Sixth Circuit have reduced attorney's hours spent on purely clerical work. *See Clark v. Shop24 Glocal LLC,* No. 2:12-cv-802, 2016 WL 3639893, at *5 (S.D. Ohio July 8, 2016) (recommending clerical work be deducted from the attorney's fee award), *report and recommendation adopted in part by,* 2016 WL 5533585 (S.D. Ohio. Sept. 30, 2016); *Gibson v. Scott*, No. 2:12–cv–1128, 2014 WL 661716 (S.D. Ohio Feb. 19, 2014) (noting that "purely clerical or secretarial activity is not billable at a paralegal's rate, or at any rate at all, because such tasks are included in office overhead") (other citations omitted); *E.E.O.C. v. Whirlpool Corp.*, No. 3:06-cv-0593, 2011 WL 3321291, at *7 (M.D. Tenn. Aug. 2, 2011) (declining to award

fees to plaintiff for hours billed by her attorneys that amount to clerical tasks and consists the overhead costs normally expected in legal practice); *Tierney v. City of Toledo*, No. 83–430, 1989 WL 161543, at *12 (N.D. Ohio Aug. 28, 1989) (explaining that "[t]ime spent by a lawyer on purely clerical matters not calling for the exercise of legal expertise or judgment, and which could be equally well performed by clerical staff, should not be recoverable under § 1988").

As mentioned above, the Plaintiff cites *Isabel* in support of her argument. In *Isabel*, the Court dismissed the defendant's argument that the rate should be adjusted downward based on numerous listed tasks that could have been performed at a lower hourly rate. *Id.* at 416. In doing so, the Court noted, "Plaintiffs' lawyer, however, is a solo practitioner who does not operate with the assistance of paralegals or support staff." *Id.*

The Court finds that the present circumstances are different from the circumstances presented in *Isabel* because Plaintiff's counsel operates with a legal assistant, Cheryl Mahaffy. Furthermore, the Court interprets *Isabel* to hold that some tasks lie in a grey area, which can be charged by an attorney at an attorney's rate, while purely clerical tasks are not compensable. Here, the Defendant has identified twelve billing entries that it argues are clerical. *See* [Doc. 193 at 14, 17]. The Court has reviewed these twelve billing entries and finds several that are truly clerical and should be deducted from the attorney's fees award as overhead costs. Specifically, the Court recommends deducting the following hours:[7]

| JBM | 2/5/2016 | Travel to UPS store (.1) to mail disk with documents to defense counsel with copy to EEOC counsel (reduced) | .4 |
| JBM | 6/24/2015 | Mail hard copy to EEOC paralegal | .1 |

_____

[7] The Court notes that Attorney Morton and Attorney Ayesh used blocked billing in their entries. While block billing is not prohibited, it is difficult to discern how much time was spent on clerical work. The Court, therefore, has used its experience and judgment in determining what portion of the objected to fees should be disallowed as non-compensable clerical time.

| | | | |
|---|---|---|---|
| JBM | 2/22/2013 | Scan pay records | .1 |
| JBM | 4/18/2014 | Scan and circulate EEOC determination letter | .1 |
| MMA | 7/30/2015 | Scan and send 3/2014 damages letter to J. Morton for inclusion in settlement demand | .2 |
| JBM | 2/4/2016 | Scan medical records to prepare for production | .1 |
| JBM | 2/12/2016 | Scan and circulate executed declaration with message re: meeting | .3 |
| JBM | 3/26/2016 | Scan and send letter from 3/2013 written to DG from our office again seeking conciliation | .1 |
| MMA | 1/8/2016 | File motion for protective order | .3 |
| JBM | 3/11/2016 | File motion for SJ and download (in part) | 1.0 |
| JBM | 9/2/2015 | Receive draft responses to discovery requests from client | .1 |

As mentioned above, the Court has reviewed all twelve billing entries, and the other entry dated October 3, 2014, is incidental to legal work. Accordingly, the Court will not recommend any further reductions other than the reductions above (*i.e.,* 2.3 hours of Attorney Morton's time and .5 hours of Attorney Ayesh's time).

### 5. Duplicative Work

The Defendant asserts that the lodestar amount should be lowered as a whole for duplicative work with the EEOC and for overbilling. The Defendant compares the instant matter with *Jones* and argues that counsel here has requested almost four times more billable hours for a single plaintiff disability discrimination case co-prosecuted by the EEOC. The Defendant states that courts apply reductions based on the EEOC's significant contribution when an intervening plaintiff seeks fees. Further, the Defendant contends that redundant work and excessive billing also support a percentage reduction. The Defendant requests a 50% reduction in attorney's fees.

The Plaintiff states that an across the board reduction is not appropriate in this case. The Plaintiff asserts that the lodestar amount is presumptively reasonable and that there is no reason for the Court to take such an extreme measure. The Plaintiff states that her attorneys' work contributed to the success of the case and was not unnecessarily duplicative of the EEOC's work. Further, the Plaintiff states that a fee reduction is not warranted based on the Defendant's blanket allegations of redundancy.

The Court has reviewed the parties' positions and declines to recommend a reduction in attorney's fees. It is well-established that a strong presumption exists in awarding the prevailing attorney his/her lodestar fee. *See Adcock-Ladd*, 227 F.3d 349-50. The Court should only depart from the lodestar amount in rare and exceptional circumstances. *Id.* The Defendant first asserts that the attorney's fees should be reduced to account for the EEOC's significant contribution. The Plaintiff, however, submits several Declarations explaining the division of work in this case. For instance, Attorney Morton states as follows:

> In working with the EEOC on this case, we made diligent efforts to divide work to avoid redundancy and promote efficiency. There were very few instances in which both Plaintiffs needed to file responses to the same motion. When they did, it was typically due to differences in perspectives on the issues, goals, or client requirements, or because there was not sufficient time to coordinate efforts. My firm played a substantial role throughout the litigation beginning in 2012, with EEOC signing on in 2014. Due to the departure of the EEOC's first trial attorney, new EEOC counsel needed to get up to speed as we prepared for trial. Dollar General reaps a significant savings because EEOC does not seek to recover attorneys' fees for work its staff performed that contributed to the successful outcome in this case. Our fee petition would necessarily be higher if, for example, my firm had attended the depositions of Jerri West or Katherine Kores, which EEOC handled without our participation. We also divided work on briefs, jury instructions, motions in limine, trial witnesses, and arguments.

[Doc. 166-1 at ¶ 9] (Declaration of Jennifer Morton). Further, Attorney Ayesh explains:

> This case was unique to our firm because the EEOC decided to file a lawsuit on behalf of Ms. Atkins, and then we intervened. From the beginning, Ms. Morton and I regularly coordinated with the EEOC attorneys assigned to this case, largely in an effort to avoid unnecessary, duplicative work and superfluous filings. For example, we discussed filing a Motion for Summary Judgment with EEOC attorneys, and I took the lead on preparing a joint motion and memorandum of law, while the EEOC took the lead in preparing a joint response in opposition to the defendant's motion for summary judgment. In another example, we decided to have the EEOC prepare and file a first set of proposed jury instructions, while we followed up later with supplemental instructions after taking into account what had already been filed. We also coordinated on such things as who would file motions in limine and how to delegate witness examinations at trial. In this way, I believe we were able to maximize each plaintiffs' (and their attorneys') contributions to the case and ensure we were protecting our respective clients' interests, while avoiding spending both our and the Court's time unnecessarily.

[Doc. 166-3 at ¶ 9] (Declaration of Maha Ayesh).

Finally, Attorney Markeisha Savage with the EEOC also provided a Declaration explaining that the Plaintiff's attorneys took an active role in the litigation but that they also deferred to the EEOC to handle certain matters that did not require their presence or involvement. [Doc. 201-2 at ¶ 6]. Attorney Savage explains that the parties divided work and trial tasks. [*Id.* at ¶ 7, 9]. Finally, Attorney Savage explains that the Plaintiff's attorneys' work and time spent on the case were not duplicative, redundant, or unnecessary and that their active role in this case not only contributed to the success, but also made it easier for the EEOC to adjust to the withdrawal of its first lead attorney so close before trial without having to request a continuance of the trial date. [*Id.* at ¶ 11].

Given the particular circumstances of this case, the Court finds the Defendant's argument not well-taken. First, as outlined above, three attorneys' Declarations explain the division of labor between Plaintiff's attorneys and the EEOC. *See E.E.O.C. v. A.C. Widenhouse, Inc.*, No. 1:11-cv-498, 2013 WL 12091637, at *3 (M.D. N.C. May 7, 2013)("Further, although Gill intervened in

this lawsuit, which was originally brought by the EEOC, there is sufficient evidence of a division of labor for the court to find that the hours expended by Gill's counsel were not duplicative); *see also E.E.O.C. v. Nutri/System, Inc.*, 685 F. Supp. 568, 575 (E.D. Va. Mar. 28, 1988) (noting that where intervenor's counsel works closely with the EEOC, the time should be discounted unless there is a convincing description of the division of labor).

Second, Attorney Savage explains in her Declaration [Doc. 201-2] that she and Attorney Morton were co-lead counsel and that Attorney Savage greatly benefited from Attorney Morton's participation due to her litigation and trial experience. [*Id.* at ¶ 8]. In addition, the Plaintiff's attorneys took an active role in this case, which made it easier for the EEOC to adjust to the withdrawal of its lead trial attorney, which occurred a few months before trial. [*Id.* at ¶ 11]. Finally, the Court cannot ignore the excellent result for the Plaintiff in this case.

The Defendant asserts that Attorney Savage's Declaration was ghost-written by Plaintiff's counsel and that her Declaration is not specific on the division of labor. The Court finds these arguments not well-taken. Attorney Savage signed her Declaration, and the Court finds that her Declaration and the Declarations submitted by Plaintiff's counsel provide sufficient support for the requested amount.

Further, the Defendant argues that Attorney Morton and Attorney Ayesh "routinely submitted excessive and vague billing descriptions." [Doc. 193 at 22]. The Defendant, however, points to only one entry on February 24, 2016, in which Attorney Morton later, *see* [Doc. 201 at 19, n. 1], explains that such time (11.5 hours) was spent preparing for two depositions of two major witnesses. Further, the Sixth Circuit has held that if a party provides "detailed, itemized billing records that specify, for each entry, the date and the time was billed, the individual who billed the time, the fractional hours billed (in tenths of an hour), and the specific tasks completed," such time

is compensable, even if "some of the time entries in counsel's billing statement provide only the briefest description of the task completed." *Imwalle v. Reliance Med. Prods. Inc.,* 515 F.3d 531, 554 (6th Cir. 2008). Finally, as outlined above, this case involved a heavy motion practice, including both parties filing dispositive motions and later filing motions to reconsider, including two motions to reconsider filed by the Defendant. The Court finds that the Defendant's conclusory allegations that the Plaintiff repeatedly overbilled or provided vague billing descriptions insufficient to warrant an across-the-board reduction of the Plaintiff's requested fees.

### 6. Fees for Fees

The Defendant asserts that Plaintiff's request for fees for fees is excessive and unwarranted. The Plaintiff replies that Defendant's argument is without merit.

As an initial matter, it appears Plaintiff's counsel billed 90.4 hours (63.2 hours for Attorney Morton and 27.2 hours for Attorney Ayesh) for the original Motion for Attorney's Fees and Costs.[8] Subsequently, the Plaintiff filed a Supplement [Doc. 202] requesting additional fees from October 23, 2016, to June 13, 2017. Other than two entries, one on November 2, 2016, and the other on January 4, 2017, it appears that Attorney Morton began billing on April 20, 2017, in relation to the request for attorney's fees.[9] Attorney Morton billed approximately 30 additional hours in relation to the request for attorney's fees. Attorney Ayesh billed approximately 49 hours in additional time relating to the request for attorney's fees. Ms. Mahaffy billed an additional 3.7 hours in relation to the request for attorney's fees.

---

[8] The Defendant asserts that the number of hours for litigating fees is 90.4 hours, and the Plaintiff did not respond to this assertion. *See* [Doc. 193 at 23].

[9] The Court acknowledges that there are other billing entries prior to April 20, 2017, that are somewhat related to attorney's fees. However, these entries involve requesting that the Court compel the Defendant to respond to the original Motion. The Court will not recommend that such time be reduced.

Subsequently, the Plaintiff filed a Second Supplemental Motion [Doc. 211] requesting additional fees for the time billed from June 14, 2017, to July 11, 2017. Attorney Morton requests an additional 23.75 hours and Attorney Ayesh requests an additional 26.30 hours.

Prior to August 1, 2016, this Court limited the hours that could be awarded for litigating attorney's fees. Specifically, the Court followed the rule announced in *Coulter* that limited the amount of attorney's fees awarded to 3% of the hours in the main case when the issue is submitted on the papers without a trial and to 5% of the hours in the case after trial. *Coulter*, 805 F.2d at 151. However, the Sixth Circuit has recently abrogated the rule in *Coulter*. *See Husted*, 831 F.3d at 725. The Sixth Circuit held that the "district court can correct any abuses at the fees for fees stage under the 'unreasonableness' standard." *Id.* at 722.

The Court has reviewed the billing entries and recommends that the time submitted in the Second Supplemental Motion [Doc. 213] be reduced by 50%. Specifically, Attorney Morton billed approximately 11.65 hours for preparing for the hearing, and Attorney Ayesh billed approximately 7.6 hours for preparing for the hearing. With respect to drafting the sur-sur reply, Attorney Morton billed approximately 8.75 hours, and Attorney Ayesh billed approximately 11.95 hours. The Court agrees with the Defendant that the billing entries are duplicative and excessive. Moreover, spending almost twenty hours preparing for a hearing that lasted a little over an hour is excessive. Accordingly, the Court will recommend reducing 9.775 hours of Attorney Ayesh's time, and 10.2 hours of Attorney Morton's time.

### C.  Litigation Costs

The Plaintiff requests that she be awarded litigation expenses pursuant to 42 U.S.C. § 12205.  The Plaintiff states that her expenses total $3,276.95.[10]  The Plaintiff explains that her expenses include mediation expenses, copies of documents for production and for depositions, copies of the Plaintiff's medical and social security records, and parking and lunch expenses related to trial and depositions.  Finally, the Plaintiff also requests the fees charged by Dr. Charles Baum.  The Defendant objects to reimbursing Dr. Baum's $1,600.00 fee.   The Defendant asserts that Dr. Baum's economic report is irrelevant.

Due to the lack of an objection, the Court will recommend that the Plaintiff be awarded litigation expenses in the amount of $1,676.95.  The Court, however, will not recommend that the Plaintiff be awarded the fees associated with Dr. Baum's report.  Dr. Baum's report was not helpful to the Court in its analysis and the Plaintiff does not provide any analysis as to why the Defendant should be required to pay for Dr. Baum's report.  *See Norkunas v. HPT Cambridge, LLC* 969 F. Supp. 2d 184, 200 (D. Mass. 2013) ("Where expert witness fees are deemed reasonable litigation expenses, they may be reimbursed.").

---

[10] In the original Motion, the Plaintiff requested $4,815.29 in litigation expenses. In the latest filing, however, the Plaintiff reduces her request to reflect that the EEOC refunded the mediator's fee.  *See* [Doc. 211 at 3].

## V. CONCLUSION

For the reasons explained above, the Court **RECOMMENDS**[11] that the Plaintiff's Motions [**Docs. 163, 202, 211**] be **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court **RECOMMENDS** that the Plaintiff be awarded a total amount of $445,322.25 in attorney's fees and $1,676.95 in litigation expenses. The Court arrives at this calculation for attorney's fees as follows:

| Attorney | Requested Hours | Clerical Reduction | Fees for Fees Reduction | Hourly Rate | Award |
|----------|-----------------|--------------------|-----------------------|-------------|-------|
| Morton | 833.15 | 2.3 | 10.2 | $350 | $287,227.50 |
| Ayesh | 617.65 | .5 | 9.775 | $250 | $151,843.75 |
| Mahaffy | 65.8 | n/a | n/a | $95 | $6,251.00 |

Respectfully submitted,

Bruce Guyton

United States Magistrate Judge

---

[11] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).