# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: August 07, 2018

Ms. Maha M. Ayesh
Ms. Jennifer Buchanan Morton
8217 Pickens Gap Road
Knoxville, TN 37920

Mr. John E.B. Gerth
Mr. Stanley E. Graham
Mr. Paul Maxwell Smith III
Waller, Lansden, Dortch & Davis
511 Union Street, Suite 2700
Nashville, TN 37219

Ms. Markeisha K. Savage
Ms. Barbara L. Sloan
U.S. Equal Employment Opportunity Commission
131 M Street, N.E.
Washington, DC 20507

Re: Case No. 17-6278, *EEOC, et al v. Dolgencorp, LLC*
Originating Case No. : 3:14-cv-00441

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                    Yours very truly,

                    Deborah S. Hunt, Clerk

                    Cathryn Lovely
                    Deputy Clerk

cc: Mr. John L. Medearis

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0163p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
         *Plaintiff-Appellee*,

LINDA K. ATKINS,
      *Intervenor Plaintiff-Appellee*,

     *v*.

DOLGENCORP, LLC, dba Dollar General Corporation,
         *Defendant-Appellant*.

No. 17-6278

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:14-cv-00441—Thomas A. Varlan, Chief District Judge.

Argued: July 25, 2018

Decided and Filed: August 7, 2018

Before: COLE, Chief Judge; SUTTON and LARSEN, Circuit Judges.
_____

**COUNSEL**

**ARGUED:** Stanley E. Graham, WALLER LANSDEN DORTCH & DAVIS, LLP, Nashville, Tennessee, for Appellant. Barbara L. Sloan, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Federal Appellee. Maha M. Ayesh, JENNIFER MORTON LAW, PLLC, Knoxville, Tennessee, for Appellee Atkins. **ON BRIEF:** Stanley E. Graham, John E. B. Gerth, P. Maxwell Smith, WALLER LANSDEN DORTCH & DAVIS, LLP, Nashville, Tennessee, for Appellant. Barbara L. Sloan, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Federal Appellee. Maha M. Ayesh, Jennifer B. Morton, JENNIFER MORTON LAW, PLLC, Knoxville, Tennessee, for Appellee Atkins.

## OPINION

SUTTON, Circuit Judge. Linda Atkins, once a sales associate at Dollar General, is a type II diabetic who occasionally suffers from low blood sugar. She must respond to these episodes by quickly consuming glucose to avoid the risk of seizing or passing out. When she asked her manager if she could keep orange juice at her register in case of an emergency, the manager refused. Atkins' fears came to fruition. In late 2011 and early 2012, she suffered two episodes while working alone. Each time she responded by drinking orange juice from the checkout cooler, paying for it immediately after the episode, and reporting the incident to her supervisor. Dollar General fired Atkins. And the Equal Employment Opportunity Commission filed this lawsuit. Because a jury permissibly found that Dollar General had "discriminate[d] . . . on the basis of disability," we affirm.

I.

Diabetes is a chronic, sometimes life-long, condition caused by dysfunction of the endocrine system. Linda Atkins must monitor her blood sugar level daily to ensure that it is sufficiently high. Even when she does, Atkins occasionally experiences low blood sugar episodes (hypoglycemia), prompting her to shake and have difficulty seeing and thinking clearly. These episodes can cause Atkins to seize or pass out and, left untreated, can be fatal. Twice before, severe episodes required Atkins to be hospitalized.

To minimize the number of hypoglycemic episodes, Atkins takes insulin daily and monitors her diet closely. When an episode occurs, Atkins must ingest 100 calories of glucose but no more. As a remedy, Atkins prefers to drink orange juice because it acts quickly and is easy to measure.

Atkins began working at Dollar General as a sales associate in August 2009. Between then and March 2012, Dollar General gave Atkins annual raises and promoted her to lead sales associate, a position that put her in charge of handling the cash in the store during the day,

depositing the cash at night, and closing the store. The store's assistant manager considered Atkins a "good supervisor," a "hard worker," and "trustworthy." R. 151 at 78.

When Atkins experienced hypoglycemic episodes at work, she typically excused herself to the break room, where she kept her orange juice in a cooler. Her new role often required her to work alone, however. Atkins spoke to the store manager, Wanda Shown, about keeping orange juice at her register. But Shown told her that store policy prohibited it.

After the promotion, Atkins suffered two hypoglycemic episodes, one in late 2011, the other in early 2012. Because Atkins worked alone each time and because there were eight to ten customers in the store each time, she could not retreat to the break room. Instead she took a bottle of orange juice from the store cooler and drank it. After each episode ended, she paid the $1.69 she owed for each bottle of juice. Both times, Atkins told the store manager what had happened.

In March 2012, District Manager Scott Strange and Regional Loss Prevention Manager Matt Irwin conducted an audit of the store to address employee-theft and other merchandise "shrinkage" issues. They interviewed Atkins, telling her they had heard she eats Little Debbie cakes behind the counter. Atkins denied the accusation but admitted that she had twice taken orange juice from the store cooler during a medical emergency and paid for it each time.

Strange and Irwin thought that these two events violated Dollar General's "grazing policy," which forbids employees from consuming merchandise in the store before paying for it. They fired Atkins at the end of the meeting.

Atkins filed a discrimination complaint with the Equal Employment Opportunity Commission. After investigating the charge, the Commission filed this lawsuit against Dollar General under the Americans with Disabilities Act. Atkins intervened in the lawsuit as a plaintiff. Atkins' reasonable accommodation and discriminatory discharge claims proceeded to trial, and the jury found in her favor on both. The jury awarded Atkins $27,565 in back pay and $250,000 in compensatory damages. The court awarded Atkins' lawyers $445,322 in attorney's fees and $1,677 in expenses.

II.

Dollar General challenges this judgment on four grounds: (1) Atkins waited too long to file her complaint; (2) Dollar General should win as a matter of law on the plaintiffs' reasonable accommodation claim; (3) Dollar General should win as a matter of law on the discriminatory discharge claim; and (4) the district court miscalculated the attorney's fees.

*Timeliness*. A claimant under the Americans with Disabilities Act must file her charge with the Commission within 180 days of the "alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). But in a "deferral state"—one that has a "law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice"—she also must exhaust her claim by filing it with the state or local agency. *Id.* § 2000e-5(c). Filing a claim with the state or local agency extends the time for filing a claim with the Commission to 300 days. *Id.* § 2000e-5(e)(1). All agree that Atkins filed her claim more than 180 days, but fewer than 300 days, after Dollar General fired her. The question is whether she "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." *Id*.

The Tennessee Human Rights Commission administers the Tennessee Disability Act, which says: "There shall be no discrimination in the hiring, firing and other terms and conditions of employment . . . of any private employer, against any applicant for employment based solely upon any physical, mental or visual disability . . . ." Tenn. Code Ann. § 8-50-103(b). Filing a charge with the Tennessee Commission, as Atkins did here, thus entitled her to file the complaint with the federal Commission within 300 days of the discharge, and thus explains why the Equal Employment Opportunity Commission properly designated the Tennessee Human Rights Commission as a deferral agency. *See* 29 C.F.R. § 1601.80.

Dollar General counters that the Tennessee Commission does not qualify because some federal and state courts have refused to recognize a reasonable accommodations theory under the Tennessee Act. But the state Act need not map perfectly onto the federal Act in order to require exhaustion. Our federalist system assumes that there often will be more than one way to solve a policy problem. For that reason, the exhaustion statute speaks in terms of subject matter

jurisdiction, referring to any state agency "with authority to grant or seek relief" from the employment practice at issue. 42 U.S.C. § 2000e-5(e)(1). The relevant question is whether the state agency has the power to entertain the claimant's disability discrimination claim, not whether state law recognizes the same theories of discrimination as federal law. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001).

Whether Tennessee recognizes a reasonable accommodation theory of discrimination is neither here nor there. Atkins claims that Dollar General fired her because of her disability. The Tennessee statute prohibits "discrimination in the hiring, firing and other terms and conditions of employment," Tenn. Code Ann. § 8-50-103(b), just as the Americans with Disabilities Act prohibits "discriminat[ion] . . . in regard to . . . the hiring, advancement, or discharge of employees . . . and other, terms, conditions, and privileges of employment," 42 U.S.C. § 12112(a). Because Atkins filed her disability discrimination charge with a state agency that had authority to entertain it, she receives the benefit of the 300-day limitations period.

That conclusion follows the U.S. Supreme Court's example of preferring easy-to-apply, bright-line rules for determining which clock to apply. *See EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 124 (1988). In a comparable setting, it rejected an interpretation that would "confuse lay complainants" and "embroil the EEOC in complicated issues of state law" because the "EEOC has neither the time nor the expertise to make such determinations under the varying laws of the many deferral States." *Id.* That remains sound advice today.

*Reasonable Accommodation.* Dollar General claims that the jury erred in finding that it discriminated against Atkins by failing to provide her with a reasonable accommodation for her disability. 42 U.S.C. § 12112(a), (b)(5)(A). The company faces a steep hill. We may grant judgment as a matter of law only if, after reading the evidence in the light most favorable to Atkins, there is no material fact issue for the jury to decide. *See* Fed. R. Civ. P. 50; *Garrison v. Cassens Transp. Co.,* 334 F.3d 528, 537–38 (6th Cir. 2003).

Dollar General claims that it had no duty to accommodate Atkins because Teresa Thayer, her nurse, testified that Atkins could treat hypoglycemia in other ways. Thayer mentioned several equally effective treatment options to address hypoglycemia, including glucose tablets or

gels, honey, candy, and peanut butter crackers. Given these options, Dollar General maintains, it had no obligation to let Atkins keep orange juice at the register.

But these options do not make the jury's verdict unreasonable. The company's "Personal Appearance" policy states that employees "should not chew gum or eat/drink, except during breaks (which should not be taken on the sales floor, at registers, etc.)." R. 28-1 at 101. Just as a jury could find that the company prohibited employees from drinking orange juice at the register, so too could it find that it prohibited them from consuming glucose tablets, cough drops, candy, and honey packets at the register.

The policy's disclaimer, it is true, states that "[r]eligious and/or disability-related exceptions may be permitted depending on the circumstances." R. 28-1 at 101. But Atkins asked for such an exception and got nowhere. When she asked her store manager if she could keep orange juice at her register because of her diabetic condition, the manager told her "it's against company policy" and to "[b]e careful of the cameras." R. 154 at 16–17.

Once Atkins requested this reasonable accommodation, the employer had a duty to explore the nature of the employee's limitations, if and how those limitations affected her work, and what types of accommodations could be made. *See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007); 29 C.F.R. § 1630.2(o)(3). Had Dollar General followed this route, it might well have told Atkins that she could consume glucose pills at the register and perhaps that would have resolved the matter. But that's not what it did. The store manager categorically denied Atkins' request, failed to explore any alternatives, and never relayed the matter to a superior. That was Dollar General's problem, not Atkins'—or at least a reasonable jury could so conclude.

Even if the company's policy permitted alternative glucose sources, the plaintiffs presented evidence suggesting that those options, though medically equivalent in the abstract, were not practically equivalent in the concrete. Candy ran the risk of getting crushed or melting in Atkins' pocket, and it is more difficult to measure its sugar content anyway, creating the further risk of a "spike" in which her body would be "thrown from down here to up here." R. 151 at 160. Honey packets were hard to use because they required Atkins to "stick [her] tongue

in there and get it out." R. 154 at 60. Nor could she imagine doing her job while "cramming peanut butter crackers in [her] mouth" at the same time. R. 154 at 155. She said that the glucose tablets were "useless" because she would have to take four or five pills, each the size of an Alka-Seltzer, all while under duress. R. 154 at 30.

Dollar General insists that glucose is glucose and thus its accommodate-thyself defense should have prevailed. But we need not decide whether Dollar General could have reasonably accommodated Atkins by permitting one of these alternatives because it did not do so. All that matters is whether the jury had a legally sufficient basis to conclude that Dollar General failed to provide Atkins reasonable alternatives to keeping orange juice at her register. Ample evidence supported that conclusion.

*Discriminatory Discharge.* Dollar General also claims that the jury went astray when it found that it discriminated against Atkins by terminating her because of her disability. 42 U.S.C. § 12112(a). Boiled to its essence, Dollar General's claim is that it had a legitimate, nondiscriminatory reason for firing Atkins, namely the company anti-grazing policy.

But a company may not illegitimately deny an employee a reasonable accommodation to a general policy and use that same policy as a neutral basis for firing him. Imagine a school that lacked an elevator to accommodate a teacher with mobility problems. It could not refuse to assign him to classrooms on the first floor, then turn around and fire him for being late to class after he took too long to climb the stairs between periods. In the same way, Atkins never would have had a reason to buy the store's orange juice during a medical emergency if Dollar General had allowed her to keep her own orange juice at the register or worked with her to find another solution.

Happily for us, doctrine lines up with common sense in this setting. A defendant may use a legitimate, nondiscriminatory rationale as a shield against *indirect* or *circumstantial* evidence of discrimination. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92 (6th Cir. 2016). But a neutral policy is of no moment when an employee presents *direct* evidence of discrimination. *See id.* And failing to provide a protected employee a reasonable accommodation constitutes direct evidence of discrimination. *See Kleiber*, 485 F.3d at 868. Hence "failure to consider the

No. 17-6278           *EEOC v. Dolgencorp, LLC*           Page 8

possibility of reasonable accommodation for known disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities." *See McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997) (en banc) (quotations omitted).

This insight disposes of several of Dollar General's arguments. The company maintains that the plaintiffs failed to demonstrate that similarly situated non-protected employees were treated more favorably than Atkins. But this showing is necessary only when there is no direct evidence of discrimination. *See Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999). For good reason: The company cannot mask discrimination by firing able-bodied employees who need no accommodation. Any such comparison gives analogy a bad name.

Dollar General also challenges the district court's neutral-explanation jury instruction. But we may set aside jury instructions only if they prejudice someone. *See EEOC v. New Breed Logistics*, 783 F.3d 1057, 1074–75 (6th Cir. 2015). That did not happen in view of our earlier conclusion that Dollar General failed to provide Atkins a reasonable accommodation.

Dollar General adds that the verdict cannot stand because Atkins never produced evidence of animus towards the disabled. As support, it invokes this statement by Atkins' counsel at closing argument: "We're not claiming that Dollar General dislikes people with diabetes or that it fired her to get rid of people with diabetes." R. 156 at 129. But the Act speaks in terms of causation, not animus. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314–17 (6th Cir. 2012) (en banc). An employer violates the Act whenever it discharges an employee "on the basis of disability" (a necessary requirement for liability), not only when it harbors ill will (a sufficient way of establishing liability). 42 U.S.C. § 12112(a). Imagine a company that fired a visually impaired employee to save itself the minimal expense of buying special software for her. Without more, that would constitute termination "on the basis of disability," even if all of the evidence showed that cost-savings, not animus towards the blind, motivated the company.

*Attorney's Fees*. The Act entitles prevailing parties to a reasonable attorney's fee. *Id.* § 12205. We presume that the "lodestar amount"—the number of hours worked times a reasonable hourly rate—amounts to a reasonable fee. *See Perdue v. Kenny A. ex rel. Winn*,

559 U.S. 542, 546 (2010). We review all such awards for an abuse of discretion. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

A magistrate judge prepared a report and recommendation on attorney's fees, which the district court adopted. The report considered the market rate in the Knoxville area, fee awards in similar cases, and the rate necessary to entice legal counsel to perform this kind of work.

Dollar General alleges that the magistrate overlooked *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010), when it considered the success and complexity of Atkins' case. In *Perdue*, the Supreme Court warned of double-counting, stressing that "factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar." *Id.* at 546. But the magistrate in this case did no such thing. He considered both success and complexity in his calculation of the lodestar amount, not as an enhancement to the lodestar.

Dollar General resists this conclusion on the ground that courts have awarded Atkins' attorneys, Jennifer Morton and Maha Ayesh, lower hourly rates in the past. Because that rate should be the same here, the argument goes, there must have been a double-counting, post-lodestar enhancement in violation of *Perdue*. But the company makes the mistake of assuming constant rates. The magistrate considered the prior awards and adequately explained why he deviated from them. Morton's past case was a discovery dispute, in which the court took no testimony about Morton's hourly rate. And in Ayesh's past case, the court adopted the amount that the plaintiff's counsel had billed. The magistrate found and applied more analogous cases, which led him to a higher reasonable hourly rate. But he did not further enhance the lodestar for success or complexity. That analysis respects *Perdue*.

On its last breath, Dollar General argues that the court failed to reduce the reward for duplicative work by Atkins' attorneys and the Commission's attorneys. But the magistrate reasonably relied on testimony that the two teams of lawyers worked cooperatively and avoided duplicative work by dividing up "briefs, jury instructions, motions in limine, trial witnesses, and arguments," among other tasks. R. 214 at 23. No abuse of discretion occurred.

We affirm.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 17-6278

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff - Appellee,

LINDA K. ATKINS,

    Intervenor Plaintiff - Appellee,

    v.

DOLGENCORP, LLC, dba Dollar General Corporation,

    Defendant - Appellant.

>  **FILED**
>  Aug 07, 2018
>  DEBORAH S. HUNT, Clerk

Before:  COLE, Chief Judge; SUTTON and LARSEN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

                              **ENTERED BY ORDER OF THE COURT**

                              Deborah S. Hunt, Clerk